## Overseers of READING *against* Overseers of CUMREE.

*Lancaster,*
*Saturday,*
*May 30.*

THIS was a *certiorari* to the Sessions of *Berks* county, to bring up the proceedings of that court upon an order of two justices, removing *Elizabeth Ackerman*, a pauper, from the township of *Cumree* to the borough of *Reading*.

*An indented servant, imported from Europe into this state, gains a legal settlement where he first serves sixty days, either with the master to whom he was indented, or with his assignee; and it is of no consequence, that the assignment is voidable by the servant, because not duly made in the presence of a justice, provided the servant performs his service under it.*

From the evidence before the Sessions, the case was thus:

The pauper, whose name before her marriage was *Hendenbrooke*, was imported directly from *Europe* into this state, and was bound on the 22d of *March* 1794, by indenture before the register of *German* passengers, to serve *John Lewis Barde* and his assigns for two years and nine months, in consideration of 20*l*. 2*s*. 0*d*. paid for her freight from *Amsterdam*. She served with *Barde* in the township of *Robeson* forty-seven days, and on the 7th of *May* 1794 was by him assigned to *William Whitman* of *Robeson*, who on the 8th of *May* 1794 assigned her to *John Whitman* of *Reading*. These assignments were by indorsement upon the indenture,

*If the assignment of an indented servant be absolutely void, yet a service performed to the assignee in one township, with the consent of the master in another, is a service with the master in the township of the assignee, and obtains a settlement there.*

*An order removing a married woman to the place where she was last legally settled before her marriage, is not defective, because it omits to state that her husband had no known legal settlement. This court will not presume that he had any such settlement.*

*No intendment is to be made against an order of removal.*

*On appeals to the Sessions from orders of removal by two justices, that court is to decide according to the merits, without regard to defects in the orders.*

not under seal, and not made in presence of a justice of the peace.

She served with *Whitman* in the borough of *Reading*, until she was free. She was then married to *Ackerman*, and lived in the township of *Cumree*, where she was likely to become chargeable. Her husband had abandoned her. The order of two justices removing her to *Reading*, as the place where she was last legally settled before her marriage, was upon appeal to the Quarter Sessions, confirmed.

*Evans* and *C. Smith* for the overseers of *Reading*, took several exceptions to the confirmation of the order.

1. That no settlement was obtained by the service in *Reading*, because it was not with the original master, but with his assignee; and the act of the 9th of *March* 1771, sec. 18, does not permit a settlement to be gained by service with the assignee, except where there has been a service for the space of sixty days, with the master. It enacts that " every in-" dented servant, legally and directly imported from *Europe* " into this province, shall obtain a legal settlement in the " city, borough, &c. in which such servant shall first serve " *with* his master or mistress the space of *sixty* days; and if " *afterwards* such servant shall duly serve in any other " place for the space of twelve months, such servant shall " obtain a legal settlement in the city &c. where such ser-" vice was last performed either with his or her first master " or mistress, or *on an assignment.*" 1 *Smith's Laws* 332. In this case the service *with* the master was but forty-seven days.

2. That the assignment was not according to law, and therefore there was no legal assignee, with whom the service could take place. The indenture was under seal; and the assignment without seal passed nothing. By the act of 1700, 1 *Smith's Laws* 10, no servant can be assigned over to another in this state but in the presence of one justice of the peace of the county. The servant may avoid a different assignment. *Commonwealth* v. *Flanegan* (*a*). Not only so, the law contains a prohibition and inflicts a penalty, which makes the assignment void, and prevents this court from giving it effect in any way. 5 *Vin.* 507. C. *pl.* 15., *Mitchell* v. *Smith* (*b*).

3. The pauper is married. Her husband's settlement is

(*a*) *Brown's Rep.* 295. (*b*) 1 *Binn.* 188.

her settlement. The order should have adjudged that he had no known legal settlement. It only states that she was married, and had a place of legal settlement before marriage.

*F. Smith* and *Hopkins* for the township of *Cumree*, answered,

1. That the original service with an assignee, was as much within the spirit of the act of 1771, as a service in the second instance. The law did not regard the party served, but the party serving, and the township to whom the benefit was rendered. The service is also within the words, for an assignee is a master, and where he first serves with him, is where he first serves with his master. But supposing the law otherwise, the service to the assignee in *Reading* with the consent of the master in *Robeson*, was a service with the master, and gained a settlement in *Reading*. A person may serve his master in another place. *St. Olaves* v. *All Hallows* (a), *St. Luke's* v. *St Leonard's* (b).

2. That the assignment if void, leaves the service in *Reading* upon the footing of a service with the consent of the first master, and is already noticed. But in fact, the act of 1700 was made for the servant's benefit, not to prevent him from gaining a settlement where he has served. He may avoid the assignment; but if he does not, surely the township where he has duly served, and whom he has benefited, cannot say he was not so assigned as to acquire a settlement. The point has already been decided under a parallel statute, the 5th *Eliz. St. Nicholas* v. *St. Peter's* (c).

3. The court will not intend that the husband had any known legal settlement; and of course that objection fails. *St. Michael's* v. *Nunny* (d), is in point. Besides, the act of the 20th of *March* 1810, sec. 4, directs that upon appeals from the determination or order of two justices to the Common Pleas or Sessions, the cause is to be decided on its facts and merits only, without regard to deficiency in form or substance.

*In reply*, it was said, that the service with the assignee was not a service with the master, in Pennsylvania, so as to gain a settlement. The English cases were distinguishable, because there the last forty days service gives a settlement

(a) 3 *Burn's J.* 391.     (b) *Id.* 396.     (c) *Id.* 384.     (d) *Id.* 489.

1812.

READING
v.
CUMREE.

in the place where the service is performed; but here, the settlement is where the master lives.

As to the defect in form being no objection, it was said that the clause in the act of the 20th of *March* 1810, the hundred dollar law, did not apply to orders of removal in pauper cases.

TILGHMAN C. J. It is enacted by the act " for the relief of " the poor" (9th *March* 1771) that " every indented servant, " legally and directly imported from *Europe* into this pro- " vince, shall obtain a legal settlement in the city, borough, " township or place, in which such servant shall first serve " with his or her master or mistress for the space of sixty " days; and if afterwards such servant shall duly serve in " any other place for the space of twelve months, such ser- " vant shall obtain a legal settlement in the city, borough, " township or place where such service was last performed, " either with his or her first master or mistress, or on an " assignment." The pauper in this case was bound by a legal indenture in the township of *Robeson;* and having served there less than sixty days, was assigned to a person living in the borough of *Reading*, where she served sixty days; so that *Reading* is the place where she first served her master sixty days. But it is objected, that in order to gain a settlement by a service of sixty days, such service must be to the master to whom she was bound, and not to an assignee. There is no reason for this distinction, nor is it supported by the words of the act, which do not restrict the service to the *first* master. The master under the assignment is as much a master as the person to whom the servant was originally bound; and so the legislature considered him, for in the last part of this very clause, mention is made of the first master and the master under the assignment. It is not in the power of the servant to prevent an assignment; and it would be most unreasonable to torture the words of the law, so as to prevent the gaining of a settlement, where there has been a legal binding and a service under it for sixty days.

A second objection to the settlement in *Reading* is, that the assignment was not legal, because not made in the presence of a justice of the peace. The act of 1700 enacts that " no servant shall be assigned over to another per-

"son, but in the presence of one justice of the peace of "the county, under the penalty of 10*l.*" This act was intended for the benefit of the servant, and ought not to be construed to his prejudice. The assignment may be avoided by the servant, but it is not declared by the act to be absolutely void; and when both parties have chosen to abide by it, I consider it as a good assignment for the purpose of gaining a settlement. The township of *Reading* has had the benefit of the pauper's service, as much as if the assignment was in strict legal form. This rule of construction has been adopted in a much stronger case, *Parish of St. Nicholas* v. *Parish of St. Peters*, 3 *Burn's Justice*, 384, 385, where an indenture, declared to be absolutely null and void by the statute 5 *Eliz.*, was held to be good for the purpose of gaining a settlement. But even if this assignment was absolutely void, the settlement might be supported, because in that case, the service being performed in *Reading* with the consent of the first master, might be considered as service to the first master, or, as the act expresses it, service *with* the first master, for I consider the word *with* as synonimous with *to*. If the master lives in one township and employs the servant in another, the settlement will be in the township where the servant resided, for that is the township which has reaped the fruit of the service.

There remains one more objection to be considered. It is this: that the pauper, being a married woman, could have no settlement of her own during the coverture, and that although the 19th section of the act for the relief of the poor, provides, that if the husband has no known legal settlement, the wife shall be deemed to be legally settled, in the place where she was last legally settled before her marriage, yet the order in this case is bad, because it is not expressed that the husband had no known legal settlement. To this objection two answers have been given, either of which is sufficient. In the first place, it ought not to be presumed for the purpose of avoiding this order, that the husband had a settlement when none appears. This is a reasonable principle, and is supported by the cases cited from 3 *Burn's Justice* 489; and in the next place, it is provided by the 4th section of the act of the 20th of *March* 1810 (commonly called the consolidating hundred dollar act) that on appeals

1812.

READING
v.
CUMREE.

from the order of two justices to the court of Quarter Sessions, the court shall decide according to the merits, without regard to defects in the order either as to form or substance. Some question has been made, as to the kind of order intended by this act. But as it embraces an order of removal in its terms, and I know no reason for excluding such an order, I consider the act as comprehending it. We have the evidence before us on which the Sessions decided, and there is nothing in it, which proves that the husband of the pauper had any settlement. I am of opinion that the judgment of the Court of Quarter Sessions should be confirmed.

YEATES J. It appears to me that the present case is fairly embraced by the first branch of the 18th section of the poor act. The pauper was an indented servant, legally and directly imported from *Europe* into this state, and first served with her master the space of sixty days within the borough of *Reading*. At all events I think the defect of an assignment before a justice of the peace cannot be taken advantage of by that borough on a question of settlement. The present indenture was executed before the register of *German* passengers, and its validity cannot be questioned. The servant, having served under it twelve months, gained thereby a legal settlement. *Reading* had the benefit of her services during that period, and cannot now urge a default on the part of the original master, in order to affect her claim of support when she has become poor and impotent. This appears so just and reasonable in itself, that an act of the master over which the servant had no control should not materially injure the latter, that high authority would be necessary to establish a contrary doctrine. But the cases cited fully support it; and the words of Lord *Hardwicke* are, that an indenture may be voidable at the election of the parties themselves, if they think fit to take advantage of it, and not by a third person. *St. Nicholas* v. *St. Peter's, Bur. Set. Ca.* 91. See also *St. Petrox* v. *Stoke Fleming. Ib.* 250. On any other construction, the pauper, according to the language of one of the cases, must *starve in the name of God,* which I cannot accede to.

If the order of removal should be supposed defective by reason of its not appearing therein that the husband of the

pauper had no known legal settlement, the same might have been amended, both in form and substance, by the express provisions in section 4th of the act of the 20th of *March* 1810; or the Sessions might have proceeded to hear the appeal on its merits. It was competent to the borough of *Reading* to have shown the settlement of the husband upon the appeal, and if they had so done, the order of the justices must have been quashed. This court will not make any intendment against the order. 3 *Burn's Just.* 489, (16th *ed.*)

I am clearly of opinion that the order of Sessions should be affirmed.

BRACKENRIDGE J. having been sick during the argument, gave no opinion.

Order of Sessions confirmed.