# Overseers of the Poor of Limestone Township *versus* Overseers of the Poor of Chillisquaque.

1. In an order of removal, the justices did not adjudge where the paupers' last place of settlement was. The court below refused to quash, for that reason : *Held*, not to be error.

2. A. abandoned his domicile in Pennsylvania, lived for several years in Illinois and Missouri, where children were born to him, who, upon his death, returned to this state. *Held*, that they were foreigners, so far as the poor-laws were concerned, had no legal settlement here, and must be supported by the district in which they first became chargeable.

3. The provision for the removal of paupers into other states is nugatory ; there is no power by which it can be carried into effect.

June 10th and 11th 1878. Before AGNEW, C. J., MERCUR, GORDON, WOODWARD and TRUNKEY, JJ. SHARSWOOD and PAXSON, JJ., absent.

Error to the Court of Quarter Sessions of *Northumberland county:* Of May Term 1877, No. 230.

In the court below this case was heard upon an appeal by the Overseers of the Poor of Limestone township, from an order of removal made by two justices, directing the removal to that township of two paupers who had become chargeable in, and had been supported by, the township of Chillisquaque.

The facts appeared by depositions taken upon the appeal, and were as follows : Isaac Dolby lived until September 1861 with his father, Christian Dolby, in Limestone township, Union county. In that month he enlisted and served in the army until 1865, when he returned to his father's house, lived with him and in the neighbor-

[Overseers of Limestone *v.* Overseers of Chillisquaque.]

hood until April 1866, when he sold his property in Pennsylvania and moved with his wife to the west. They lived successively in Freeport, Illinois, where their stay was short; in Morgan county, Missouri, where they remained for a year; in Benton county, in the same state, where they took up a homestead of one hundred and sixty acres, built a house and lived from 1868 until 1871, during which time their son, Christian, was born. In 1871 they removed to Henry county, also in Missouri, and while living here their son Samuel was born. In 1873 they left Missouri and settled in Peoria, Illinois, where Isaac died in February 1875. His widow thereupon came east with her children, and took up her residence with Christian, her husband's father, who, in 1867, had moved from Limestone township, Union county, to Chillisquaque township, Northumberland county. The children, Christian and Samuel, who are the paupers in question, were supported by their grandfather until October 1875, when he was granted relief on their account by the Overseers of Chillisquaque, and they were supported at the cost of the township from that time until January 1877.

On January 17th 1877, the Overseers of Chillisquaque obtained from two justices of the borough of Milton an order of removal, of which the following are the essential parts:—

"Northumberland county, ss.

"To the Overseers of the Poor of Chillisquaque township, in said county; and to the Overseers of Limestone township, in Union county, Pennsylvania.

"Whereas complaint has been made to us, the subscribers, two justices of the peace of the borough of Milton, in the county of Northumberland, by the Overseers of the Poor in Chillisquaque township, in said county, setting forth that on the 1st day of October 1875, Christian Dolby, aged about eight years, and Samuel Dolby, aged about six years, minor children of Isaac Dolby, deceased, and grandchildren of Christian Dolby, senior, then and there actually became chargeable for their support to the said township of Chillisquaque, without the said children having gained a legal settlement within the said township, and remain so chargeable; and also setting forth that Isaac Dolby, deceased, the father of said children, had his *last* known legal settlement within the township of Limestone, in Union county, in said state. And whereas we, the said justices of the peace, after a careful consideration of the evidence laid before us, and also of the law of the case, do find the said allegations to be true, and do adjudge the same to be true. * * *

"The 19th section of our Act of 13th June 1836, declares that when a person is liable to become chargeable as a pauper to any district, it shall be lawful for two magistrates of that county to remove such person at the expense of the district, city or place where he was last legally settled, whether in or out of Penn-

[Overseers of Limestone *v.* Overseers of Chillisquaque.]

sylvania. From the digest of statutes of the state of Missouri, published in 1865, we see that a person who has resided there for the space of twelve months next preceding the time of any order being made, has acquired a legal settlement in that part of Missouri where he resided. (See Digest, page 232, sect. 3.) And in the Digest of the Statutes of the state of Illinois, published in 1858, we see that the residence of a person in any county of Illinois, for the space of thirty days immediately preceding such person's becoming chargeable as a pauper, gives him a legal settlement for said purpose in Illinois. (Digest, p. 187, sect. 12.) And as Isaac Dolby aforesaid, after leaving Pennsylvania resided in Missouri about eight years; after that again upwards of a year in the state of Illinois, it seems clear to us that he must have gained a legal settlement in both of these western states after leaving Pennsylvania. And now, if the above children are to be removed west at all, we are of the opinion that the burden and expense should not fall upon Chillisquaque township, where these children and their father never had a legal settlement, but that it should be borne, in justice, by the Overseers of the Poor of Limestone township, in Union county, Pennsylvania, where the said Isaac Dolby, the father, had his last legal settlement in Pennsylvania.

" We do therefore hereby authorize and require you, the Overseers of the Poor of Chillisquaque township, to remove and convey Christian Dolby and Samuel Dolby, the children of the said Isaac Dolby, to the township of Limestone, in Union county, Pennsylvania, and deliver them, together with this order, or copy thereof, to the overseers of the poor of the said township of. Limestone, who are hereby ordered and required to receive and provide for said children as legally settled inhabitants thereof, until the said children are removed west for said purpose if that be deemed necessary or advisable by said township. As witness our hands and seals at Milton this 17th day of January, Anno Domini 1877.

JOHN F. WOLFINGER, J. P. [L. S.]

JNO. MILLER, J. P. 　　　[L. S.]"

The order also contained a further discussion of the question of Isaac Dolby's settlement, and a reference to numerous decisions.

An appeal was taken on February 1st by the Overseers of Limestone township, and upon the hearing a motion to quash the order of removal was also made :

1. Because there was no adjudication that Limestone was the legal settlement of the paupers.

2. Because the order directed the paupers to be removed, and " to be kept until the children are removed west for said purpose," which the Act of Assembly does not authorize.

3. Because the evidence before the justices disclosed that the settlement of both paupers was outside the state of Pennsylvania.

The appeal raised the question of the paupers' legal settlement,

and the court, (Rockefeller, P. J.,) refused the motion to quash and confirmed the order of removal, holding that Isaac Dolby's last settlement in Pennsylvania was in Limestone township, that while it was possible he had gained a settlement elsewhere, the evidence did not fix with certainty the township or poor district; that the court probably did not have the power to determine the settlement of a pauper in another state, and remove him, and would not do so in any event without clear evidence, which was wanting in this case; and, therefore, since the Act of Assembly required the removal to be to the place of the last legal settlement, whether in or out of the state, the paupers must go to Limestone township, where it was certain their father's last settlement in Pennsylvania had been, and in which they had acquired a derivative settlement from him.

To this ruling the Overseers of Limestone township excepted, and afterwards having obtained a writ of error, assigned for error the refusal to quash and the confirmation of the order.

*Linn, Dill & Marr*, for plaintiffs in error, upon motion to quash, cited, 3 Binns's Just. 543; West Buffalo *v.* Walker, 8 Barr 180; Burrell Township *v.* Pittsburgh, 12 P. F. Smith 475; and referred to difference between Act of 1810, § 4, providing that no deficiency of " form or substance" should prejudice on appeal, upon which Overseers of Reading *v.* Overseers of Cumree, 5 Binn. 81, was decided, and the Act of 1836, § 19, Purd. 1156, pl. 21, which speaks of defects of " form" only.

With regard to the settlement of the paupers, they argued that the evidence showed that the father had abandoned his domicile in Pennsylvania, that the children were born elsewhere, and therefore, being foreigners, must be supported by the township in which they first became chargeable : Phila. *v.* Bristol, 6 S. & R. 565; Overseers *v.* Bunn, 12 Id. 292; Overseers *v.* McCoy, 2 P. & W. 434.

*R. M. Cummings*, for defendants in error.—On appeal the Court of Quarter Sessions decides according to the truth and merits, without regard to defects in form or substance : Reading *v.* Cumree, 5 Binn. 81; Cumberland *v.* Jefferson, 1 Casey 463.   The Supreme Court is confined to the regularity of the proceedings : Shippen *v.* Gaines, 5 Harris 38; Bradford *v.* Goshen, 7 Smith 495.   A settlement in Limestone was clearly proven, and to avoid the consequences a new settlement elsewhere must be clearly and *specifically* proven.

Mr. Justice GORDON delivered the opinion of the court, October 7th 1878.

On an appeal from an order of removal, the Court of Quarter

[Overseers of Limestone *v.* Overseers of Chillisquaque.]

Sessions is required by the Act of Assembly, if there be any defect in the form of said order, to amend the same, and thereupon to proceed to hear and determine the case upon its truth and merits. And so it seems, from the case of the Overseers of Reading *v.* The Overseers of Cumree, 5 Binn. 81, whenever the matter is brought by appeal within the power of the Quarter Sessions, defects in the order, whether in form or substance, are to be disregarded.

It follows, that though in the order under consideration, it does not appear that the justices who issued it adjudged Limestone township to be the last place of settlement of the paupers; the court, nevertheless, did right in refusing the motion to quash.

Whether these paupers were properly chargeable to Limestone remains to be considered. According to the case of the Overseers of Washington *v.* The Overseers of Beaver, 3 W. & S. 548, the prima facie settlement of a pauper is the place of his birth, but the birth of a child does not give it a settlement, except when the settlement of the parents is not known, and then, only until it is discovered.

The latter part of this proposition must, necessarily, be subject to the qualification that the known place of settlement of the parents is within the state, for the knowledge of such settlement comes to nothing if it be beyond the jurisdiction of our courts, since it could not, in that event, be charged with the maintenance of the pauper. It is, therefore, obvious that the prima facie settlement by birth must become, for all practical purposes, absolute whenever it is ascertained that the child is of foreign or *extra* state parentage. It is indeed true that, by our poor laws, provision is made for the removal of paupers into other states, but this provision is nugatory in that there is no power by which it can be carried into effect; hence, the order of removal loses all force the moment it crosses the state line. In other words, the legislature of Pennsylvania cannot charge the poor districts of other states with the support of paupers, though their settlements may properly be therein, and, *per contra*, other states cannot so charge the poor districts of Pennsylvania.

Now, the children, who are the subjects of the order under consideration, were born, the one in Missouri, and the other in Illinois; their father, Isaac Dolby, was resident in the state last named at the time of his death, and had abandoned his domicile in Pennsylvania some nine years previously. We have, therefore, two facts which should definitely settle the question in hand: 1. Isaac Dolby was not a citizen of Pennsylvania when his children were born, and, hence, had no settlement therein. 2. These children were native-born citizens of other states, and must be regarded, for the purposes of this case, to have been settled therein.

The conclusion, made inevitable by the facts and principles developed by this case, is, since neither the paupers nor their parents

[Overseers of Limestone *v.* Overseers of Chillisquaque.]

were or are citizens of this state, they must be treated as strangers, and, for the present, that district must be regarded as their place of settlement in which they first became chargeable.

> The order of the Court of Quarter Sessions of the Peace is reversed, and the order of removal discharged. It is further ordered that the appellant have and receive from the poor district of Chillisquaque such costs and charges as to said court shall seem just.