## Juniata County *versus* Overseers of the Poor of Delaware Township.

1. Where a person abandons his settlement in this state and acquires a settlement in another state, his status on returning to this state is that of a foreigner with respect to the laws of this state relating to paupers and insane paupers.

2. When, under the statutory provisions of this state, the Court of Quarter Sessions of any county commits to the state lunatic asylum an insane pauper who has no legal settlement within the Commonwealth, but only a residence therein, the county wherein he is found a lunatic

is chargeable with the expense of his removal and maintenance, without remedy over against the township in which he had such residence.

3. A. abandoned his domicile in Delaware township, Juniata county, Pennsylvania, in 1869, and settled in Kansas, where he acquired a legal settlement. In 1878 he returned to Delaware township, Juniata county, Pa., and resided there, without acquiring a new legal settlement, until 1883, when he was declared an insane pauper, and was committed by the Court of Quarter Sessions of Juniata county to the state lunatic hospital. In a proceeding by the county of Juniata against the overseers of the poor of Delaware township to be reimbursed for the expense of his removal and maintenance:

*Held*, that he had no settlement in Delaware township, and that the county of Juniata was liable for such expense.

4. Acts of February 17, 1854 (P. L., 85), and April 8, 1861 (P. L., 249), considered.

May 29th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J. absent.

ERROR to the Court of Quarter Sessions of *Juniata county:* Of July Term, 1884, No. 65.

Upon a petition filed in the name and on behalf of Juniata county, the Court of Quarter Sessions granted a rule on the overseers of the poor of Delaware township, in said county, to show cause why said court should not certify to the trustees of the Pennsylvania State Lunatic Hospital at Harrisburg that Delaware township poor district is the place of settlement of Theorus Thompson, a pauper committed to the Pennsylvania State Lunatic Hospital, and to show cause why said township of Delaware should not reimburse or pay to Juniata county the sum of $52.85 costs of commission and removal of said Theorus Thompson, and also to show cause why said township should not pay expenses of keeping him there.

An answer was filed, and testimony was taken before a commissioner. After hearing the court discharged the rule, BARNETT, P. J., filing the following opinion :

The facts in this case sufficiently appear from the testimony of witnesses examined by the commissioner and we need not repeat them, nor refer to them further than to say we have found the facts to be as contained in the request made by the Attorney for Juniata county, as follows :

1. That Theorus J. Thompson was born in Delaware township, Juniata county, and had a settlement there.

2. That his parents resided in Delaware township, and had a settlement there at the time of his birth.

3. That he never acquired any other settlement in the Commonwealth of Pennsylvania.

4. That he had resided in Delaware township since 1878 until the 21st day of March, 1883, when he was removed to the

Hospital for the insane, at Harrisburg, by virtue of proceedings instituted under the Act of Assembly approved April 20th, 1869, by order of the Court of Quarter Sessions of Juniata county; and also further find, that Theorus Thompson removed from the State of Pennsylvania to Kansas about the year 1869, where he became the owner of real estate and lost his domicile in Pennsylvania by acquiring a new one in the latter state, and that he acquired a new domicile independent of his father. See Overseers of Toby *v.* Overseers of Madison, 8 Wright 60, as applicable to the facts of this case.

Domicile, residence and settlement each differ from the other. The first two depend upon fact and intention, the last is regulated and determined by the poor laws. There may be residence where there is no settlement within the meaning of these statutes. When Theorus Thompson lost his residence here by acquiring a new domicile in Kansas, he also lost his settlement in Delaware township. Upon his return, with the intention of remaining, this again became his residence, but it does not appear from the evidence that he acquired a settlement in Delaware township, but residence only. In such cases by the Act of 1854, the liability for his maintenance falls upon the County. See Danville and Mahoning Poor District *v.* Montour County, 25 Smith 35, wherein on page 38 Justice GORDON considers such liability to result from said Act of Assembly.

We are of opinion that Theorus Thompson had no settlement in Delaware township at the time he was committed to the hospital, and that the county is liable for his maintenance there, and not said township, and that therefore the rule to show cause, &c., must be discharged. And now, 28th of 1884, April, rule discharged.

Juniata County thereupon took this writ of error, assigning for error the conclusions of law set forth in the above opinion, and the discharge of the rule to show cause.

*Jeremiah Lyons*, for the plaintiff in error.—Gaining a settlement in another State does not lose the last settlement in the State where born. Inhabitants of Townsend *v.* Inhabitants of Billerica, 10 Mass. 411; Inhabitants of Canton *v.* David N. Bentley, 11 Mass. 441. The old settlement continues until he gains a new one; it is a permanent thing, it lasts during life or until a new one is acquired: 3 Burns Justice 448.

The case is analogous to a female who marries a husband who resides in another district, but has no settlement there and never acquires one; upon the death of the husband, the old settlement of the wife remains. Ibid: Buffaloe *v.* Whitedeer, 3 Harris 182. It is well settled that a settlement in this

state is not lost until another is acquired, no matter how long the pauper may have wandered from one district to another. And as the provision in our statutes for the removal of paupers into other states is nugatory, because there is no power by which it can be carried into effect (Limestone Township v. Chillisquaque, 6 Norris 294), the settlement remains. The learned judge relied on Toby Township v. Madison, 8 Wright 60, in which the court say: " Under our statutes the removal is to be to the place where the pauper was last legally settled, whether in or out of Pennsylvania." But it has since been decided that the courts of this state have no power to send a pauper beyond the limits of our own state:    Limestone Township v. Chillisquaque, 6 Norris 294.    The lunatic was committed to the hospital under § 6 of Act of April 20th, 1869 (P. L. 78, Purd., 970, pl. 6.).    This act makes no provision for the support and maintenance and expenses of removal of the persons so committed.    The liability must be fixed by either the 11th section of Act of April 14th, 1845 (P. L. 441, Purd. 971, pl. 19), the latter clause of which in regard to cases " where such person has no legal settlement in any township or district in this Commonwealth, but only a residence therein," would seem to be repealed by the Act of February 17th, 1854 (P. L. 85, § 1, Purd. 972, pl. 20).    And this Act of February 17th, 1854, is inconsistent with the Act of April 8th, 1861 (P. L. 249, § 4, Purd. 973, pl. 31), which enacts, " whenever an indigent insane person shall hereafter be sent to said hospital, the city or county from which he or she was sent, shall be liable to the trustees of the hospital for his or her maintenance, and shall have remedy over against the proper township where by existing laws the township is liable for the support of such pauper, and the overseers of the poor of such township shall have remedy over against the property of the pauper, or against any relative required by law to maintain him or her to the extent of their liability under the poor laws."    What do the words " existing laws " mean in this section?    To what Act or Acts of Assembly do they refer? Evidently to the Act of June 13th, 1836, Poor Laws.    This is a general law relating to all classes of poor, sane or insane, and most likely to have been in the mind of the legislature when the Act of 1861 was passed.    Besides this construction would produce uniformity throughout the state.    The Act of April 8th, 1861, is very similar to the first section of the Act of April 22d, 1863 (P. L. 539, Purd. 974. pl. 34) in relation to Western Pennsylvania Hospital, under which it was held the township was liable:   Harmony Township v. Forest county, 8 W. N. C. 37.

*E. S. Doty, Jr.*, for the defendants in error.—The decision of this Court is the very opposite of the doctrine announced in the two Massachusetts cases cited by plaintiff in error.   In Limestone v. Chillisquaque, 6 Norris 294, it is ruled that where one abandons his settlement in Pennsylvania, and acquires a new one in another State he not only loses his settlement in the former State, but ceases to be a citizen thereof.   On this authority the pauper must be regarded as a foreigner, so far as the poor laws of the state are concerned. Thompson having lost his settlement in Delaware township by having acquired one in Kansas, the next question is : does the liability of Delaware Township, for his maintenance, continue so as to give the county a remedy over against it.   The answer to this question must depend not on the poor laws, but on the statute regulating the transfer of insane paupers to the State Lunatic Asylum.   The 11th Sec. of Act of April 14th, 1845 (Purd. 971, pl. 19), makes it the duty of courts "to certify to the trustees the legal settlement of such person, if he or she have any legal settlement in this commonwealth ; and if such persons shall have no such settlement, then to certify the place of residence of such person at the time of offence committed ; and the poor district so certified to be the place of settlement or residence of such person shall be chargeable with the expenses of his or her care or maintenance and removal to and from said asylum."   This refers to insane criminals, but may be applicable also to the case of insane paupers.   If there were no other Act of Assembly the liability of Delaware township to the county would hardly be questioned.   But the Act of February 17th, 1854 (Purd. 972, pl. 20), provides : "That where such person has no legal settlement in any township in this commonwealth, but only a residence therein, the county shall be chargeable."   When an indigent insane person is placed, by direction of the court, in one of the lunatic hospitals of the state, the county is primarily liable to the trustees for his or her care and maintenance, with remedy over against the township or poor district "where, by existing laws, the township is liable for the support of such pauper," the township or poor district to be reimbursed out of the estate of the lunatic, if he or she has any, or by relatives if they are of sufficient ability :   Ex parte Blewitt, 32 Leg. Int. 336.   The "existing laws" under which a township or poor district, as the case may be, is made liable for the maintenance of paupers in a State Lunatic Hospital, are to be found in but a single section of the Act of April 14th, 1845 (Purd. 971, pl. 19), namely § 11.   This section provides, that it shall be the duty of the court, in all cases where they shall commit any person to the asylum,

to certify to the trustees the legal settlement of such person if he or she have any legal settlement in this commonwealth, and if such person shall have no such settlement, then to certify the place of residence of such person, and the poor district so certified to be the place of settlement or residence of such poor person, shall be chargeable with the expense of his or her care and maintenance, and removal to and from said asylum. This certification, however, is not to be made until after due notice has been given to the constituted authorities having control of the poor in the township or district to be charged, and this notice is material; for, under the first section of the Act of February 17th, 1854, Purd. 972, pl. 20, which was a supplement to the Act of April 14th, 1845, and which very properly recognizes a distinction between a legal settlement and a residence as applied to paupers, a township or district thus notified might come into court and show that some other district was the true place of settlement of the lunatic, and thus legitimately escape liability (Shenango Twp. v. Wayne Twp., 10 Cas. 184) ; or that the lunatic was not settled in such district, but only resided therein at the time of the transfer to the asylum ; in which case the liability for care and maintenance would fall upon the county. The case of Overseers of the Poor of Harmony Twp. v. Forest County, 10 Nor. 404, was under the Western Hospital Act and has no application here.

Mr. Justice TRUNKEY delivered the opinion of the Court, October 6th, 1884.

How a person coming into a district may gain a settlement, where an illegitimate child shall be deemed to be settled, where shall be the settlement of a married woman during coverture and after her husband's death, and when the overseers of a district shall furnish relief to a poor person not having a settlement therein, are matters defined by statute. Little, if anything, respecting settlements is left to be determined from ancient usage, or by analogy. The statute contemplates that a person may lose his settlement by acquiring a new one without the state as well as within, and provides for the removal of a pauper " to the city, district or place where he was last legally settled, whether in or out of Pennsylvania." It may be difficult, and often impossible, to remove a pauper from this state to his place of settlement in another; this provision may be nugatory as regards its enforcement, and yet material in ascertaining the intendment of the statute respecting persons coming into a district from another state.

Whenever a pauper has a settlement in this state, the dis-

[Juniata County *v.* Overseers of Poor &c.]

trict wherein he is settled is liable for his maintenance; but if he has no known legal settlement he shall be maintained by the district where he becomes a public charge. If the settlement of the pauper is in another state or country to which he cannot be removed, the district where he resides when he becomes chargeable is liable for his support. This is the general rule, subject to some statutory exceptions, as, for instance, when the court commits a pauper to the State Lunatic Hospital, who has no legal settlement within this commonwealth, but only a residence therein, the county wherein he is found a lunatic shall pay the expenses of his maintenance and removal. A person who has acquired a legal settlement in another state, after he had a settlement here, seems to stand on like footing as a person who never was in this state. Hence, the ruling in Inhabitants of Townsend *v.* Inhabitants of Billerica, 10 Mass. 411, was not followed in Limestone *v.* Chillisquaque, 87 Pa. St. 294, though the facts in the latter case were similar to those in the former. The settlement of a person continues until he gains a new one. When he removes from this state and acquires a domicile and settlement in another, he has no settlement in Pennsylvania. It might be provided that he should have, by statute, or by long established usage, but is not.

Section 4, of the Act of 1861, P. L. 249, provides that whenever an indigent insane person shall be sent to the State Lunatic Hospital, the city or county from which he is sent shall be liable to the trustees of the hospital for his maintenance, and shall have remedy over against the proper township, liable by existing laws for support of such pauper. A chief object of this section was to give the trustees an efficient and ready remedy for recovery of the expenses of maintaining such pauper, and it relieved no district or person, chargeable by then existing laws for the pauper's support, from ultimate liability. The Act of 1854, P. L. 85, imposing the burden of supporting an insane person who has been committed to the State Lunatic Hospital, and who has no legal settlement in this commonwealth, upon the county where he was found a lunatic, has not been repealed.

Order and decree affirmed.