## PLUMCREEK TP. v. ELDERTON BOROUGH.

### APPEAL BY PLAINTIFF FROM THE COURT OF QUARTER SESSIONS OF ARMSTRONG COUNTY.

Argued October 15, 1889—Decided October 28, 1889.

Where a poor person, who has acquired a settlement in this state, removes
therefrom to another state and there acquires a settlement, but subse-
quently returns to this state, the poor district to which he comes and
first becomes chargeable is liable for his support.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 69 October Term 1889, Sup. Ct.; court below, No. 71
September Term 1883, Q. S.

On September 3, 1883, the poor district of Plumcreek town-
ship having obtained an order for the removal of Esther Kim-
mell, known formerly as Hetty Porter, to the poor district of
Elderton borough, the latter district entered an appeal from
the order.

Depositions having been taken and filed, and hearing had, the
court, NEALE, P. J., on February 4, 1889, filed the following
opinion:

The overseers of Plumcreek township present, among others,
the following point:

6. That under all the evidence in this case, Elderton borough
is the place of the last legal settlement of Esther Kimmell, and
the order of removal is affirmed.

Answer: Refused.[1]

The subject of this controversy for the past twenty years

appears to have been leading a vagrant sort of life. At one time she appears to have been the owner of real estate in Elderton; this was before the war, some thirty or more years ago. She sold this real estate and moved away, and afterwards, in the year 1866, or about that time, became the owner of real estate in Atwood borough, where she resided for a brief period in the year 1867. She sold this property, and moved out of the home shortly prior to November 2, 1867. What the actual value of this real estate was may only be inferred from the consideration named in the deed. If she was sui juris and was the bona fide holder of the real estate and lived on it for one whole year, it would establish a settlement in that place. From the evidence, the house she lived in was built in the fall of 1866, and she must have moved out of it before November 2, 1867. She then went west and remained some time. A settlement had been acquired by her in the borough of Elderton prior to the war; but it appears for a very long period she had not resided in Elderton. In her wanderings she appears to have been in the states of Ohio, Indiana and Iowa.

If she acquired any settlement after that she had originally obtained in the borough of Elderton, then her settlement was lost and that borough would no longer be liable for her support than if she had never had a settlement there, unless by subsequent acts she regained a settlement in that place, but there are no facts in the evidence showing such to be the case. Now the evidence here shows that she inhabited the state of Iowa for over two years. Evidently she lived in some district, either as a pauper or otherwise, and under the laws of that state she was capable of acquiring a settlement by inhabiting a district for one year or upwards, unless she was prevented by the affirmative acts of the proper authorities of the particular district in which she resided, namely, by a formal warning served upon her before the expiration of any one year, this warning to be repeated from time to time, so that one whole year would not be completed without her being so warned. The only testimony bearing upon this fact of being warned is that of the pauper herself, who says that she never was warned. Her own testimony must also be relied on as to the period of her residence. She testified that she lived in DesMoines, in the state of Iowa, in one house for two years, and afterwards in a cave,

and it would appear that she then became an inmate of a poor house, presumably in the city of DesMoines. There appears to have been a period of ten to fifteen years of total absence from Armstrong county, before her return in 1883. But the only testimony bearing upon the fact of acquiring a settlement in that time, is that which relates to her residence in DesMoines, which, from the testimony of the pauper, covered a period of three years and upwards.

Under the law of Iowa a woman abandoned by her husband would be subject to the same rule as to acquiring a settlement as if sui juris, and this also is true as to the laws of our own state. The intention must be gathered from the facts. The pauper testifies that she had been married at one time, but that her venture in that respect was unfortunate, as her putative husband was already a married man. If that were so, the marriage was void; or, if valid, it is very clear that he had wholly abandoned the pauper. [Under the evidence, we cannot, therefore, avoid the conclusion that under the laws of Iowa she had, prior to her return to Armstrong county in 1883, acquired a settlement in Iowa,] [6] which would effectually relieve the borough of Elderton of any liability for her support based upon her original settlement in that borough.

After the return of the pauper in 1883 she appears to have first come to dwell in Plumcreek township, and thereupon the overseers, after she had become a charge upon that township, proceeded to obtain an order of removal, and under such order of removal actually removed her to Elderton borough, from which order of removal the overseers of that borough took this appeal. In the meantime the pauper, either at her own instance or at the instance of others, again departed from the county and remained absent for some time, during which time the proceedings under the appeal remained in abeyance. But under the authority of Limestone Township v. Chillisquaque, 87 Pa. 294; Taylor Tp. v. Shenango Tp., 114 Pa. 394; Juniata Co. v. Delaware Tp., 107 Pa. 68, the rule seems to be plainly expressed that in case of a foreigner or a person not having a settlement in the state coming into a district, that district to which she first comes, or in which she first becomes a charge, is liable for her support. In this instance the proceedings show that she fell a charge first upon Plumcreek

Opinion of the Court.

township; and that township failing to establish the fact of an existing settlement in Elderton borough, and Elderton borough, on the contrary, showing that she had lost her settlement there, it becomes a plain duty to decide that the original liability that attached to Plumcreek township continues.

Therefore, and now February 4, 1889, the appeal of the said overseers of Elderton borough is sustained; and it is further hereby decreed that the township of Plumcreek is the place of the last legal settlement of the said Esther Kimmell, and that the overseers of the poor of the said township of Plumcreek pay the charges and expenses for the maintenance of said Esther Kimmell, and that they pay the costs of this proceeding.

· Thereupon, the overseers of Plumcreek township took this appeal, assigning for error, inter alia:

1. The refusal of the plaintiff's point.[1]

6. The portion of the opinion embraced in [ ] [6]

*Mr. W. D. Patton,* for the appellant.

Counsel cited: Iowa Code, § 1352; Cerro Gordo Co. v. Wright Co., 50 Ia. 439; Hinds v. Hinds, 1 Ia. 36; Jacob's Law of Domicile, §§ 151, 152, 450, 467; Mitchell v. United States, 21 Wall. 350.

*Mr. J. M. Hunter* (with him *Mr. R. B. Ivory* and *Mr. John A. Beatty*), for the appellee.

Counsel cited, (1) upon the conclusiveness of the findings of fact: Lower Augusta Tp. v. Selinsgrove, 64 Pa. 168; Wayne Tp. v. Jersey Shore, 81* Pa. 264; Montoursville Bor. v. Fairfield Tp., 112 Pa. 99; Laporte Bor. v. Hillsgrove Tp., 95 Pa. 276. (2) Upon the question of settlement: Pfoutz v. Comford, 36 Pa. 420; Carey's App., 75 Pa. 205; Hindman's App., 85 Pa. 466; Taney's App., 97 Pa. 77; North Yarmouth v. West Gardiner, 58 Me. 207 (4 Am. Rep. 279); Washington Co. v. Mahaska Co., 47 Ia. 57; Limestone Tp. v. Chillisquaque, 87 Pa. 294; Juniata Co. v. Delaware Tp., 107 Pa. 68; Taylor Tp. v. Shenango Tp., 114 Pa. 394.

PER CURIAM:

If the plaintiffs desired a specific finding of the facts they

should have framed their points for that purpose.    As they stand, they merely refer to conclusions of law.    This vein runs all through them.

An examination of the testimony satisfies us that the conclusions of the court are fully sustained.    The pauper, Hetty Porter, undoubtedly had a settlement in the borough of Elderton at one time.    She sold her little property there, and moved away, and it is not clear that she acquired a settlement elsewhere in this state.    Afterwards she went out west and appears to have led a roving life.    From her own statement, and there is little else in the case upon this branch of it, we find she resided in Iowa for over two years.    The court so finds, and the pauper so testified.    By section 1352 of the Code of Iowa it is provided: "Any person having attained majority, and residing in this state one year without being married, as hereinafter provided, gains a settlement in the county of his residence."    The pauper was not so married, and the court below was of opinion that she had gained a settlement in Iowa.    We are not prepared to say this was error.    Finally she left Iowa, returned to Armstrong county, and became chargeable in Plumcreek township.    She was then in precisely the same position as if she never had had a settlement in this state.    The rule of law is, that if a foreigner, or a person having no settlement within the state, comes here and becomes a charge, the district to which she comes, or in which she first becomes a charge, is liable for her support: Limestone Tp. v. Chillisquaque, 87 Pa. 294; Juniata Co. v. Delaware Tp., 107 Pa. 68; Taylor Tp. v. Shenango Tp., 114 Pa. 394.    This is settled law, and the reason of it is that when such pauper comes into a district, and becomes chargeable therein, there is no other district in the state upon which it can cast its burden.    We think the learned judge below was entirely right in this case, both upon the law and the facts, and his

Judgment is affirmed.