The town of Columbia *against* Williams and another.

| 3 | 467 |
| 69 | 4 |

" *A slave set at liberty,*" within the meaning of the statute, *tit.* 150. *c.* 1. *s.* 11., is one placed in a permanent condition of freedom, over whom the right of the master is extinguished.

*October* 28.

The town to which a slave " belongs," within the meaning of the statute, *tit.* 150. *c.* 1. *s.* 11., is that alone in which he has a *legal settlement ;* the object of the statute being to furnish a remedy, in favour of the corporate body, already liable, by the law of settlements, for the maintenance of the slave, against the individual, or individuals, on whom the expense ought, ultimately, to devolve.

THIS was an action of *assumpsit,* to recover of the defendants, as heirs of *William Williams,* Esq. late of *Groton,* deceased, the sum of 205 dollars, 56 cents, for necessary supplies furnished to *Adam,* a negro slave of said *William Williams,* Esq. The declaration stated, " That in the town of *Columbia,* on the 6th of *July,* 1817, one *Adam,* a negro slave of *William Williams,* Esq. late of *Groton,* deceased, by the providence of God, became sick and unable to take care of himself, and the heirs, executors and administrators of said deceased, neglecting and refusing to relieve the said *Adam,* to save him

from perishing, the select-men of said town of *Columbia*, as it was by law in such case their duty to do, did, between the said 6th day of *July*, 1817, and the 17th day of *January*, 1819, in meat, drink, nursing, medicine, &c. lay out, advance, and expend the sum of 205 dollars, 56 cents, of which the plaintiffs, this day, gave the defendants due notice, at *Groton* aforesaid : And the defendants, on the 4th day of *March*, 1819, became and were liable by law, as heirs of said *William Williams*, Esq. having received from him a large and plentiful real and other estate, to pay the plaintiffs said sum of 205 dollars, 56 cents ; and being so liable, the defendants did then and there, in consideration thereof, assume upon themselves, undertake, and to the plaintiffs faithfully promise, to pay them said sum of 205 dollars, 56 cents, on demand."

The plaintiffs having introduced evidence to prove, that the defendants were the sons of *William Williams*, and the grandsons of *William Williams*, Esq. mentioned in the declaration ; that the latter person lived and died in *Groton*, possessed of a large estate, real and personal, and was master of the slave *Adam ;* that he died before the father of the defendants ; but that both died before the cause of action, in this case, accrued ; and the expenditure by the plaintiffs, for the necessary support of *Adam*, being admitted ; to prove, that the defendants were in possession of a large estate, which came from their grand-father, the plaintiffs offered in evidence, copies of two deeds of gift of certain lands lying in *Groton*, one from the grand-father to the father of the defendants, and the other from their father to them. To the admission of these documents in evidence, the defendants objected ; but the judge admitted them.

The defendants claimed, that although the plaintiffs should have proved all the facts stated in their declaration, they could not recover, without proof of an express promise ; and prayed the judge so to instruct the jury. But the judge refused to give such instruction, and instructed the jury, that upon proof of the facts stated in the declaration, the law would *imply* a promise to pay.

The defendants claimed, that it was proved, that *Adam* was settled in the town of *Groton* with his master, and contended, that this action would not lie in favour of the town of *Columbia*, against the defendants, but if the defendants were liable at

all, they would be liable to the town of *Groton.*   On this point, the judge instructed the jury against the claim of the defendants.

The plaintiffs having obtained a verdict, the defendants moved for a new trial, on the ground of the admission of improper evidence, and of a misdirection.

*Goddard* and *C. Perkins,* in support of the motion, contended, 1. That the heirs of a deceased master of a slave, could, in no case, be subjected for the maintenance of such slave, unless they were heirs *having assets by descent*; and to shew this, the *deeds of gift,* offered in evidence by the plaintiffs, were irrelevant.

2. That heirs within the statute, could not be subjected for the maintenance of any person, except " *a slave set at liberty by his owner.*"   It is not alleged in the declaration, nor was it proved on the trial, that *Adam* was a person of this description.

3. That admitting the defendants to have been *heirs,* and *Adam* to have been a *slave,* within the meaning of the statute, still the town of *Columbia* could not maintain the action, not being the town to which such slave *belonged.*   The word " belong," as used in this statute, denotes *inhabitancy.*   *Groton* alone was entitled to sue.   [Some other points were made, and argued, which, from the decision of the Court, it has become unnecessary to state.]

*Lanman* and *Brainard,* contra, contended, 1. That the liability of *heirs* was not limited to those who inherited property *by descent,* to the exclusion of such as received it *by gift or devise.*   The statute, which creates the liability, makes no such distinction.

2. That " a slave set at liberty," within the meaning of the statute, is one *in fact having his liberty—going at large—not under the controul of his master.*   Such a slave was *Adam.*

3. That the term " belong," is used in the statute, in its popular acceptation, denoting the place of *residence,* at the time the relief is afforded, without including the idea of a legal settlement.   The town in which the slave *resides,* must, from the nature of the case, be the town to afford the needed relief. The intention of the legislature, was, to give that town, for

*Windham,*
*October,*
*1820.*

Columbia
*v.*
Williams.

their indemnity, a right of action against the master, or his heirs.

HOSMER, Ch. J. *Adam*, a negro slave of *William Williams*, Esq. late of *Groton*, deceased, becoming sick, and the defendants, who are the heirs of the said *William Williams*, refusing to relieve him, the plaintiffs supplied him with necessary food, medicine and attendance, to a considerable amount.—The defendants, who had derived a large real and personal estate from the said *William Williams*, were notified, by the plaintiffs, of the advancements made, but refused to reimburse them ; in consideration of which, the plaintiffs contend, that by virtue of the statute, they have a right to recover ; and to this end they instituted their suit. It is not pretended, that the slave ever was an inhabitant of *Columbia ;* or that he ever was emancipated ; and from the facts conceded, it appears, that he belonged to *Groton*, and was never made free. The jury were instructed, by the judge, at the circuit, that if these facts were proved, the plaintiffs were entitled to their verdict.

The section of the law on which the action is founded, is expressed in the following words : " And that all slaves, *set at liberty by their owners*, and all negro, mulatto and *Spanish* Indians, who are servants to masters for time, in case they come to want, *after they shall be set at liberty*, or the time of their said service be expired, shall be relieved, by such owners or masters respectively, their heirs, executors or administrators ; and upon their, or either of their refusal so to do, the said slaves and servants shall be relieved, *by the select-men of the town to which they belong ;* and the said select-men shall recover of the said owners or masters, their heirs, executors or administrators, all the charges or cost they are at for such relief, in the usual manner, as in case of other debts." *Tit.* 150. *c.* 1. *s.* 11. The persons to whom this section extends, are " slaves set at liberty by their owners." In its popular meaning, this expression is precisely commensurate with the words *slaves emancipated.* The proviso immediately succeeding the section recited, demonstrates, that this was the signification intended by the legislature ; the word *emancipate*, there used, intentionally co-extending with the phrase, " set at liberty," in the preceding section.

Undoubtedly, when no authority is exercised over a slave, and he is suffered, without restraint, to reside or migrate where he pleases, he *in fact* is free, and will continue so, until his master shall resume the government, which he has suspended ; but the slave has not been " set at liberty." This expression denotes the putting of him in a permanent condition of freedom, and implies the *extinguishment of the right*, which the master had over his slave, and not the mere temporary cessation of actual authority. It is manifestly obvious, that the slave in question has not been set at liberty, within the intention of the law.

*Windham, October, 1820.*

Columbia
*v.*
Williams.

When a slave, emancipated without the permission of the select-men of the town wherein he is settled, is reduced to want, the duty of relieving him is first devolved on his former owner. On his refusal to do this, of which the mere omission is held sufficient proof, the slave is to be relieved, by the select-men of the town " to which he belongs." It has been contended, by the plaintiffs, that a person *belongs* to the town in which he *resides*, and hence, that *Adam* was of *Columbia*, the place in which he had a residence, at the time of his sickness. But the meaning of the word *belongs*, on which this train of reasoning entirely depends, has been utterly misconceived.

By the law of settlements, the support of a slave in necessitous circumstances, is incumbent on the town in which he is a settled inhabitant : Of consequence, the supplies by *Columbia*, gave her a right to recover of *Groton*. But *Groton*, before the existence of the law on which the plaintiffs have founded their suit, was deficient in remedy against the master and owner of the slave. To correct this mischief, the act was made ; and hence the word *belongs*, as used in the statute, denotes *an inhabitant*, and was intended to designate the remedy conferred on the town in which the slave was settled, to reimburse itself for the advancements made for his support. This, likewise, is the popular signification of the word, when applied to indicate the relation which an individual bears to a town, and harmonizes with the meaning of the same term, as used in many of our statutes. It, therefore, is indisputably clear, that the slave *Adam* did not *belong* to *Columbia*, within the intendment of the statute ; and that the plaintiffs have no cause of action against the defendants.

*Windham,*
*October,*
*1820.*

*Columbia*
*v.*
*Williams.*

I shall pursue the questions raised by the motion no farther, as a new trial must be granted.

All the other Judges concurred in the opinion, that the subject of the suit was not " *a slave set at liberty,*" within the meaning of the statute. PETERS and BRISTOL, Js., concurred in the opinion, that the town of *Columbia* was not the proper party plaintiff, as being the town to which the slave *belonged;* while CHAPMAN and BRAINARD, Js., expressed, on that point, a contrary opinion.

New trial to be granted.