*The Overseers of the Poor of Georgia,* appellees,

vs.

*The Overseers of the Poor of Grand Isle,* appellants.

That in *settlement cases* the Court will take no notice of a *settlement* out of this state.

The plaintiffs, by a regular order and warrant of removal, removed a pauper, by the name of *Wheeler,* from said *Georgia* to said *Grand-Isle,* as the place of his legal settlement. The defendants appealed to the County Court, and there pleaded in bar, " that the said pauper was unduly removed to said *Grand-Isle,* and the said order ought to be reversed, because, that, though true it is that the said *Wheeler* heretofore, to wit, on the 12th day of June, A. D. 1816, at *Grand-Isle,* aforesaid, was an inhabitant of, and then and there had a legal settlement in, said town of *Grand-Isle,* Yet the defendants say, that afterwards, to wit, on the 1st day of July, 1817, the said *Wheeler,* at *Grand-Isle,* aforesaid, removed from *Grand-Isle,* aforesaid, to the town of *Plattsburgh,* in the state of *New-York,* and there resided for the space of ten years, &c. and, according to the laws of said state of *New-York,* became an inhabitant of, and obtained a legal settlement in, the said town of *Plattsburgh;* and that said town of *Plattsburgh,* by the laws of said state of *New-York,* were at the date of said order of removal, bound and obligated to support and maintain the said *Wheeler,* whenever he should be unable to support himself: and that said *Wheeler* has never gained any settlement in said town of *Grand-Isle,* since his said removal to said *Plattsburgh* : and this they are ready to verify, and pray that said order of removal may be reversed," &c.

To this plea there was a general demurrer and joinder in demurrer. Said plea was adjudged by the County Court to be insufficient; and judgment was rendered in affirmance of said order of removal. The cause was then, at the request of said defendants, ordered to this court for a revision of said decision.

*Smalley* and *Adams, for the defendants.* The settlement contemplated in the several provisions of the statute, is evidently the last legal settlement of the pauper. The examination, the foundation of all subsequent proceedings, must be touching the last

place of legal settlement. It would **{** Franklin, Jan. 1829.
seem, then, that the order of re- **}** *Georgia* vs. *Grand Isle.*
moval must grow out of, and follow, the examination. Hence,
if the pauper's last place of legal settlement is not within this state,
no authority is given the justice to direct his removal. The policy
of our laws, arising from the situation of our country, combining
many separate and independant jurisdictions under one general
government, strongly fortifies and confirms this construction of
our statute. Our own, and sister states, have passed statutes in-
flicting heavy penalties on persons for bringing paupers from other
states, and leaving them in any town where they have no legal
settlement :—but no state has a statute making it an offence for
bringing and leaving a pauper where he has a legal settlement.—
*Stat.* 382, *s.* 2.—4 *Cowan,* 139, *Exparte Overseers of Gates.*—
11 *Johns. R.* 167, *Crause* vs. *Mabbit & Trip.* Again, our
statutes, as well as those of other states, take notice of settlements
acquired in neighboring states.—19 *Johns.* 56, *Chatham* vs. *Mid-
dlefield.* The question then arises, what effect has the acquisition
of a settlement in another state upon that subsisting in this
state prior to such acquisition ? The general rule of law is, that
the acquisition of a new settlement is an extinguishment of any
former one. If this rule be applied to the case, there can be
no difficulty. If it is not applied, what principle will enable us
to solve the problem ? The defendants insist, that the pauper,
by acquiring a settlement in *Plattsburgh,* lost his settlement in
*Grand Isle.* In *Connecticut* this question has been considered,
and the principles, for which we contend, established.—4 *Con.
Rep.* 114, *Sterling* vs. *Plainfield.*—5 *Con. Rep.* 95, *Middletown*
vs. *Lyme* If a different doctrine should prevail, a pauper might
have a legal settlement in every state in the Union ; and endless
contests would arise between towns in different states ; each of
which would be equally liable to support him.

*Mr. Smith, for the demurrer, contended,* That the pauper, having
gained a settlement in another state, does not thereby lose his
previous settlement in this state.—10 *Mass. R.* 411, *Townsend*
vs. *Billerica.*—11 *Id.* 441, *Inhabitants of Canton* vs. *David N.
Bently.* If this position be correct, the pauper was duly removed ;
as it is admitted by the pleadings that his last legal settlement,

LLL

Franklin, Jan. 1829.  } within this state, was in said town of *Grand*
—————————  } *Isle*.   The authorities cited from *Mass.*
Georgia vs. Grand Isle.
*Reports* are, at least, of as much weight as those cited from *Connecticut*; and they comport better with a fair construction of our statute—many passages of which would be, not only nugatory but absurd, if regarded with referrence to a settlement any where but in this state.

HUTCHINSON, J. delivered the opinion of the court.   The question presented in this case is of considerable importance, and attended with some difficulty.   The question is, whether the expression, *last legal settlement*, in our statute, when it relates to orders of removal, means a legal settlement any where, or only within this state?

The decisions in *Massachusetts* and *Connecticut* are contradictory upon this point.   Whether this has resulted from their different views of policy, or from the different provisions of their several statutes, does not appear.   The decisions in *Massachusetts*, seem to regard the impossibility of giving effect to any provision or construction of their statute, that should include a settlement in another state : those in *Connecticut*, seem to regard the policy of excluding from a settlement, in that state, those who may have gained one elsewhere.   The question of policy has now been urged, with ingenuity, by the defendant's counsel, as leading to a construction of our statute favorable to the defendants.   The argument is, that, upon the construction contended for by the plaintiffs, those who have once gained a settlement in any town in this state might be publicly brought back with impunity to such town, even after they have gained a legal settlement in another state.— And even those, who should derive a settlement from these, might be publicly brought back in the same way.

This argument should have its weight if the sense of the statute were so doubtful as to receive a construction from mere principles of policy.   The cases, however, affected by this principle, are probably less numerous than the argument supposes.   When there is a determination to procure a pauper to return to the place of his former residence, there is usually some way to affect it without any exposure ; and without that publicity which would be restrained by law.

In searching for the true construction of our statute, in relation to this question, we observe, that the first section regulates what shall gain a settlement. The second section provides that each town and place shall relieve, support and maintain their own poor ; and makes it the duty of the overseers to take effectual measures to prevent the poor, resident within their respective towns or places, from strolling into any other town or place. The third section provides for the orders and warrants of removal. This, in its various circumstances, occupies the fourth, fifth, sixth and seventh sections. The eighth provides for the compensation to the officer for removing paupers. The ninth section provides, that relations of ability, and within certain degrees, shall support their poor relations. The tenth section is omitted ; and I conjectured at the hearing; and so did the defendants' counsel, that this section, when in existence, provided for the removal of paupers to, or towards, their last legal settlement, if out of this state. If so, it might affect the construction of the third section of this statute. But, I am now convinced that the tenth section made provision for a support, at the expense of the state, of those paupers who had gained no settlement within this state. The whole provisions about removal precede the ninth section. That provides for support by relations. The tenth was repealed November 8th, 1797, and directed by the repealing act, to be expunged from the statute, which had not then been published. And, in the margin is printed, "Residents out of state provided for." The 11th section provides for transient persons, suddenly taken sick, &c. when out from home. Hence it is fair to conclude, the whole business of removing having closed before the ninth section, that the ninth, tenth and eleventh sections regulated the support, not the removal of paupers. Besides, I have no recollection of ever knowing, or hearing of, but one statute of this state which attempted a provision for the removal of paupers out of the state ; and I find that to be the statute of 1787. Its total inefficiency was too apparent, in and before the year 1797, to render probable a repetition of its provisions in a new statute.

Hence we are disposed to treat the statute as made to regulate the support of the poor within this state. Indeed, there is but one expression of the statute that would lead us to suspect that any

Franklin, Jan, 1829. } thing else was ever intended, or even
*Georgia* vs. *Grand Isle.* } thought of. That expression is in the third section, where the constable is directed to transport the pauper to his legal settlement, it is added, "if within this state." This, it is argued, and plausibly too, supposes some case of transporting, if without this state. But, let the same expression be applied to the justices' issuing the order, instead of the officer's executing it, and there would be no suspicion of such intention. Any provision for removing out of the state would be a nullity, and as such would be resisted by the other state.

The same expression is susceptible of another meaning, full of caution, and implying no absurdity. The warrant commands the constable to remove and transport such stranger, with his family, &c. on the nearest and most convenient route, to the place of such stranger's legal settlement, if the same shall be within this state. Now, if, without regard to nicest grammar, this last clause be referred to the expression "nearest and most convenient route,"the whole would not be the worst constructed sentence to be found in any statute whatever ; and the sense would be, that the officer must keep within the state, though he might find a shorter route by crossing the line.

Whether this or the other conveys the actual sense of the legislature, all the other provisions of the statute are so framed, as necessarily to have their whole effect within this state. Of this character are the several provisions mentioned by the plaintiffs' counsel—the officer's leaving a copy with the overseers—the penalty upon a town that should refuse to repay the expenditures in sickness, after an order of removal—penalties on towns for not receiving paupers when removed—the right of appeal from the order, &c. These, and other provisions of the statute, must be inoperative and absurd, if applied to a settlement out of the state. Every provision made contemplates a settlement within the state. Settlements out of the state are virtually excluded from any future consideration by the 2d section, which obviously compels each town to support all the poor residing in such town, without any reference to their legal settlement. That is, they are to be treated and supported as legally settled in the town where they reside, till such town finds a place to remove them, and proceeds to such removal according to the

following sections. This is virtually say- <span>Franklin, Jan. 1829.</span>
ing, that those who have a settlement out <span>Georgia vs. Grand Isle.</span>
of the state, but none within it, shall be treated as settled in the
town where they reside.  This has been the practical construc-
tion of the statute for thirty years, and must inevitably continue to
be its practical construction.  Under all these circumstances, it
would be rather a forced construction, and not very just towards
the plaintiffs, should we now say, when the plaintiffs have found a
place of settlement to which they can remove, and have removed,
the pauper, they are to be defeated by being told of a place
of settlement to which they cannot remove him.  I have ex-
amined the books in our chamber for a case decided in *England*,
which I have sometime seen, but cannot now find, which might
have some bearing upon this point.  My recollection of it is this :
A having a settlement in *Ireland*, but none in *England*, married
a wife in *England*, who had a legal settlement in some town there.
They resided in another town still, and became paupers, and need-
ed support.  It was decided that she did not lose her settlement
in *England*, by marrying a man whose settlement was in *Ireland*;
but they could not remove *him* to the place of her settlement, nor
remove her from her husband : so they were suffered to remain
where they were.  This may not be the exact state of the case,
but probably is nearly so.

There is a case reported in *New-York*, that favors the construc-
tion we have adopted.—5 *Johns. R.* 15, *Wyncoop* vs. *Overseers
of the Poor of the City of New-York*.  S W who had her legal
settlement in *Stamford*, in *Connecticut*, resided several years in the
city of *New-York*, but under such circumstances as gained her no
settlement.  She had a bastard child born there.  The special
justices of the city made an order upon *Wyncoop* for the support
of the child.  The Sessions affirmed this order, and before the
Supreme Court, the question arose whether the child had its set-
tlement in the city ?  The judges were all agreed that its legal
settlement was there.  *Kent, C. J.* in delivering his opinion, says,
"The law declaring that every bastard child follows the settlement
of its mother, applies only to cases where the mother has a legal
settlement within the state.  If she has none, the child must be
chargeable to the town where it was born ; and it cannot be sent

Franklin, Jan. 1829. ⎰ out of the state.  It becomes a native cit-
Georgia vs. Grand Isle. ⎱ izen by birth, and is entitled to protection
as well as bound to allegiance." This case seems directly in
point, and serves to confirm our own views of the subject.

Upon what we, therefore, deem the most fair construction of
the statute, and the greatest weight of authorities, we have arrived
at the decision that the plea in bar is insufficient, and that the de-
cision of the county court, affirming the order of removal, be itself
affirmed.

Smith, for appellees.

Smalley and Adams, for appellants.