## HUGH M. ALCORN, STATE'S ATTORNEY, *vs.* FRANK W. FELLOWS.

First Judicial District, Hartford, January Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The trial court found that when the defendant, a justice of the peace in the town of Canton, imposed an unconditional sentence of fine and imprisonment upon a violator of the liquor law, he, "as justice of the peace", had an undisclosed determination to suspend execution of the jail sentence because it was his opinion that such a course would best promote the interests of justice. *Held* that the finding should be corrected by striking out the words "as justice of the peace", since any opinions or sentiments privately entertained by such an officer merely represent his personal and unofficial state of mind and can have no bearing upon his judicial determination of the case, which is conclusively evidenced by the sentence as orally pronounced by him in open court and reduced to writing in the judgment-file.

Five days after sentence was imposed by the defendant, the accused was taken by a deputy sheriff to the county jail in the city of Hartford, where the defendant met them, secured the mittimus from the deputy and destroyed it, and, for the first time, announced the suspension of the jail sentence and ordered the release of the accused from custody. Upon his return to Canton, the defendant noted the suspension on the judgment-file. *Held* that, aside from the question of defendant's power to suspend the sentence under any circumstances, these acts were of no legal effect because some were committed beyond the geographical limits of his criminal jurisdiction (General Statutes, § 6542), and all were done without observing the fundamental essentials of a judicial determination—proper notice and hearing.

Chapter 175 of the Public Acts of 1921 empowers "any criminal court or the judge holding such court", to suspend the execution of a sentence and commit the accused to the custody of a probation officer. Chapter 62 of the Public Acts of 1923 provides, in part, that "any criminal court may impose sentence and suspend the execution thereof indefinitely." *Held* that these statutes do not comprehend justices of the peace, since the term "court" is therein used in its restricted meaning to designate an ordained and established tribunal endowed by virtue

Alcorn *v.* Fellows.

of the Constitution and statutes with a continuing corporate existence.

The only courts of that nature in this State are described in § 1 of Article Fifth of the Constitution as "a Supreme Court of Errors, a Superiour Court, and such inferiour courts as the General Assembly shall, from time to time, ordain and establish."

A justice court is a court only in the sense that it is a place where justice is administered; it is not an inferior court constituted by the General Assembly; it has neither organization, jurisdiction, nor existence except while the justice is holding court; and he, though acting as a judicial officer, is not, in our legal terminology, a judge.

In statutes vesting additional powers in the regularly constituted courts and their judges, it has been the custom of the General Assembly to make explicit reference to justices of the peace, where their inclusion was intended.

The issuance of a mittimus, being a ministerial and not a judicial act, may be compelled by mandamus even though the respondent be disqualified by age from exercising any of the judicial functions of his office.

Argued January 8th—decided February 23d, 1925.

APPLICATION for writ of mandamus to compel the defendant, a justice of the peace, to issue a mittimus committing to jail an accused who had been so sentenced by him, brought to the Superior Court in Hartford County (*Hinman, J.*) which overruled the defendant's motion to quash and issued the alternative writ, and later rendered judgment (*Avery, J.*) for the defendant, from which the plaintiff appealed. *Error, judgment set aside, and cause remanded with direction to issue the writ of mandamus as prayed for.*

The application for the writ alleges, in substance, that on April 9th, 1924, upon the complaint of a qualified grand juror, one Charles M. Stevens of Canton was brought before the respondent justice of the peace charged with keeping intoxicating liquors for sale, and with maintaining a place reputed to be a place where intoxicating liquors were kept for sale; that the accused pleaded guilty and was sentenced to fine and

to imprisonment in the Hartford County jail for fifteen days; that the respondent signed and issued a mittimus committing the accused, and delivered the mittimus to a deputy sheriff of the county for service; that on April 14th the deputy sheriff took the accused into custody and conveyed him to the Hartford County jail in the town of Hartford; that upon arrival at the jail and before the accused was delivered to the jailor, the respondent appeared upon the jail premises, demanded and received the mittimus, tore it up and destroyed it, and ordered the release of the accused; and that the acts of the respondent in destroying the mittimus and ordering the release of the accused were unlawful, were an improper interference with the execution of the sentence and judgment, and injurious to the peace and order of the State.

The return of the respondent, made after a motion to quash had been overruled, admits that the accused pleaded guilty and was fined and sentenced to fifteen days in jail, and alleges that at the time of delivering judgment, the respondent determined to suspend the sentence of imprisonment, but, to make the sentence more impressive, resolved to issue a mittimus and to recall the same thereafter before the accused had been committed to jail, and that the respondent intercepted and recalled the mittimus in accordance with such previous decision. The return further alleges that thereafter, on May 19th, 1924, the accused filed with respondent a petition that the jail sentence be suspended and that the accused be placed on probation in the custody of a probation officer; and that on the evening of May 19th, after a hearing, the petition was granted, the jail sentence suspended, and the accused placed in the custody of a probation officer appointed for that purpose. The return also alleges that on May 20th, 1924, the respondent arrived at the age of seventy

years and became incapable of further acting as a judge in the cause.

The affirmative allegations of the return were denied. On the final hearing the Superior Court, being of opinion that the respondent had jurisdiction, under Chapter 175 of the Public Acts of 1921 and Chapter 62 of the Public Acts of 1923, to suspend the jail sentence in his discretion, and that his discretion could not be controlled by mandamus, dismissed the writ.

All the evidence and rulings on the final hearing are certified to this court on a motion to correct the finding. The facts and assignments of error are discussed in the opinion.

*Hugh M. Alcorn,* State's Attorney, and *Reinhart L. Gideon,* Assistant State's Attorney, for the appellant (plaintiff).

*Edward J. Myers,* for the appellee (defendant).

BEACH, J.   Referring, first, to the motion to correct the finding and assignments of error based thereon. The trial court found, in paragraph three of the finding, that at the time when the judgment of fine and imprisonment was rendered the respondent, "as justice of the peace, determined to suspend the execution of said jail sentence"; and found, in paragraph six, that "it was the opinion of the respondent, as justice of the peace, that the interests of justice would be best served if the jail sentence were suspended before it actually went into execution."   No doubt the respondent testified that he entertained the sentiments thus attributed to him.   But on the other hand, it is admitted that the judgment orally pronounced, and evidenced by the judgment-file, was that the accused be ordered to pay a fine of $400 and costs and also to be imprisoned in the

common jail of Hartford County for fifteen days. We are therefore of opinion that these findings, in so far as they state any determination or opinion of the respondent, "as justice of the peace", which is inconsistent with the judgment rendered, are without evidence and contrary to the indisputable evidence; for the reason that the respondent's judicial determination and opinion as justice of the peace is conclusively evidenced by his oral sentence pronounced in open court, reduced to writing in the judgment-file. These two findings are corrected by erasing therefrom the words "as justice of the peace", and, so corrected, they declare no more than the personal and unofficial state of the respondent's mind.

In paragraph seven it is found that "on April 14, 1924, the respondent, at his home in Collinsville, in the town of Canton, entered upon his original file and record that the jail sentence was suspended." We are asked to substitute for this, paragraph four of the draft-finding, and do so to the extent of adding to paragraph seven the words, "This entry was made without notice or hearing," such being the admitted fact. One other minor correction is hereafter referred to. Other corrections asked for are not deemed essential to the determination of the cause, or relate to matters already appearing on the pleadings or in the file of the justice.

We pass now to a consideration of the legal effect of the respondent's acts subsequent to the rendition of the original sentence and judgment. The dramatic appearance of the respondent at the Hartford County jail on the morning of April 14th, his seizure and destruction of the mittimus, and his verbal declaration that the jail sentence was suspended, had, of course, no effect at all in suspending the jail sentence; not only because these acts were done quite outside of the geographical limits of the respondent's criminal jurisdic-

tion as a justice of the peace of the town of Canton (General Statutes, § 6542), but also because none of the fundamental essentials of judicial determination were observed. For all the purposes of this case, the seizure and destruction of the mittimus and the declaration that the jail sentence was suspended, were the acts of a bystander.

In paragraph eight the court finds that the acts above recited were done by the respondent "after entering the record of suspension in Canton"; but the respondent, who was the only witness on the point, testified, in answer to the only question asked on the point, that the entry was made after he tore up the mittimus. Paragraph eight is therefore corrected, as requested, by erasing therefrom the words last above quoted. This correction is made merely to preserve the actual sequence of events, because it is manifest, for reasons already indicated, that no justice of the peace, nor any judge of an established court, has jurisdiction to suspend a sentence pronounced in open court, by making an entry on the file in his own home without notice or hearing. Thereafter, on April 23d, 1924, the State's Attorney brought this application for an alternative writ of mandamus to compel the respondent to issue another mittimus; the respondent filed a motion to quash, which was heard, and on May 14th, 1924, the motion to quash was overruled by *Hinman, J.,* in a considered memorandum of decision concluding in these words: "The resulting conclusion is that execution of the sentence imposed by the respondent justice holding court, has not been lawfully or effectively suspended and hence stands unaffected by the attempted suspension. It is, therefore, the duty of the respondent to issue a mittimus effectuating said sentence, and such issuance is a ministerial act controllable by mandamus."

Being thus notified that the jail sentence was still in force, and that on the facts alleged in the application the alternative writ was about to be issued, Stevens, on May 19th, filed a petition with the respondent, based on Chapter 175 of the Public Acts of 1921, praying for a hearing, for a suspension of the jail sentence, and for his commitment to the custody of a probation officer. Swift action was necessary, not only to anticipate the issuance of the writ, but also because the respondent would become seventy years of age on the next day, May 20th. Notice was given to the grand juror who made the original complaint, and after a hearing on the evening of May 19th, the respondent formally suspended the jail sentence and committed Stevens to the custody of a probation officer appointed for that purpose. On May 20th the alternative writ was issued, and on that day the respondent became incapable of holding his office as justice of the peace.

The questions remaining for discussion are: first, whether the trial court erred in holding that Chapter 175 of the Public Acts of 1921 and Chapter 62 of the Public Acts of 1923 apply to justices of the peace; and second, whether the respondent's constitutional incapacity prevents him from issuing a mittimus after reaching the age of seventy years.

The material portion of the Act of 1921 reads as follows: "In cases within its jurisdiction, except in cases after commitment to the state prison, or state reformatory, any criminal court or the judge holding such court may, during or after the adjournment of the term, after hearing, continue the case or suspend the execution of the sentence and commit the accused to the custody of a probation officer or to the custody of a probation officer pro tempore, to be appointed by such judge, for such time not exceeding one year as the court may fix." The Act further provides that in case the sen-

tence is to pay a fine and stand committed until the same is paid, payment may be made to the probation officer, whereupon the order of commitment shall be void; and that "such officer shall give a receipt for all moneys received by him, shall keep a record of the same and shall pay all moneys so received to the clerk of the court", etc.

The controlling question is whether the words "any criminal court or the judge holding such court", when used in their context, include a justice court or a justice of the peace holding such court. In the first place it will clear up one possible source of confusion of thought to note that the term "court" may have any one of several different meanings according to the context in which it is used. Thus, Bouvier's Law Dictionary, Rawles Revision, Vol. 1, p. 695, gives the following four definitions: (1) "A body in the government to which the public administration of justice is delegated." (2) "The presence of a sufficient number of the members of such a body regularly convened in an authorized place at an appointed time, engaged in the full and regular performance of its functions." (3) "The place where justice is judicially administered", citing Co. Litt. 58a; 3 Bla. Com. 23, 25. (4) "The judge or judges themselves, when duly convened." And the author adds, in a footnote: "The term is used in all the above senses, though but infrequently in the third sense given", etc.

We are of the opinion that the words "any criminal court" are used in this statute in the sense of Bouvier's first definition, meaning an ordained and established tribunal having criminal jurisdiction, and endowed by virtue of the Constitution and statutes with a continuing corporate existence. That is to say, a "body in the government" such as is described in Article Fifth, § 1, of our Constitution, in which some defined portion of

the judical power of the State is vested.    The authority given by the statute is limited to and conferred directly upon any criminal court, and upon the judge holding such court.    This language must refer to a court having a legal entity, distinct from that of the judges for the time being; otherwise it would not be capable of being vested directly with the power granted.    The only courts of that kind known to our law are those described in § 1 of Article Fifth as "a Supreme Court of Errors, a Superiour Court, and such inferiour courts as the General Assembly shall, from time to time, ordain and establish."    These latter include the Courts of Common Pleas, the District Court of Waterbury, and the town, borough, city and police courts.    This list includes every "criminal court" known to our Constitution and statutes.    The references in the statute to the term and its adjournment, and to the clerk of the court, also show that an organized court was contemplated.    A justice court is not an organized court, nor is it, either individually or collectively, a court having a corporate existence whose powers and jurisdiction are defined by law.    Reference to the statutes will show that such judicial powers as justices of the peace possess are conferred, not on any court, but upon the persons holding that office for the time being.    On the other hand, the statutory jurisdiction of the constitutionally authorized courts is conferred on the court itself, as the Constitution requires.

One of the powers conferred on "every justice of the peace" is to hold court "in the county for which he is appointed" (General Statutes, § 5422), and in so doing he holds a court in the sense of Bouvier's third definition—a place where justice is judicially administered. While holding it he is himself a court in the sense of Bouvier's fourth definition.    But since the General Assembly has not ordained and established an inferior

court whose functions are administered by justices of the peace, no justice court exists except while a justice is holding one.    It is a court of record from the practical necessity of making its judgments conclusive (*Fox* v. *Hoyt,* 12 Conn. 491, 497); but it is not a court in the constitutional and statutory sense of that term. Moreover, a justice of the peace, though in holding a court he "acts as a judicial officer", is not, in our legal terminology, a judge.    BALDWIN, J., draws this distinction accurately in *McVeigh* v. *Ripley,* 77 Conn. 136, 139, 58 Atl. 701.    In the proper and only statutory sense a judge is a person commissioned by that name as a judge of some established court, and since the adoption of the ninth and tenth Amendments of the Constitution, an insurmountable constitutional distinction has existed betwen a judge of a criminal court and a justice of the peace, arising out of the manner of their appointment to their respective offices.    As the Constitution now reads (Article Fifth, § 3), "the judges of the Supreme Court of Errors, of the superiour and inferiour courts",—except by the Ninth Amendment judges of probate—"shall be appointed by the General Assembly, in such manner as shall by law be prescribed."    On the other hand, the Tenth Amendment requires that justices of the peace shall be appointed by the qualified electors in their respective towns.    A justice of the peace cannot, therefore, be a judge of a criminal court in any constitutional or statutory sense of that term.    In *State* v. *Carroll,* 38 Conn. 449—where the validity of a judgment rendered by a justice of peace called in as "acting judge" of the City Court of New Haven, was questioned, on the ground, among others, that the provision in the charter authorizing a justice of the peace to act as a judge violated the constitutional requirement that the judges of the inferior courts should be appointed by the General

Alcorn v. Fellows.

Assembly—this point is mooted (pp. 477-479) but left undecided because unnecessary to the determination of the cause, and the justice was held to be a judge "*de facto.*"

The distinctions above drawn are strikingly illustrated in Article Fifth of the Constitution, which is printed in full in the footnote for reference.* They have also been observed with at least practical uniformity in our statutes, and where the General Assembly, in granting authority to the constituted courts or to their judges, has intended to include justices of the peace, they have been expressly included. See, for illustration, §§ 5508, 5509, 5520, 6548, 6552, 6553, 6562, 6564, 6582, 6592 of the General Statutes. Apart from the more conclusive reasons already given, it seems highly probable that if the General Assembly had intended to give these large discretionary powers to jus-

---

\* ARTICLE FIFTH.

OF THE JUDICIAL DEPARTMENT.

SEC. 1. The judicial power of the State shall be vested in a Supreme Court of Errors, a Superiour Court, and such inferiour courts as the General Assembly shall, from time to time, ordain and establish: the powers and jurisdiction of which courts shall be defined by law.

SEC. 2. There shall be appointed in each county, a sufficient number of justices of the peace, with such jurisdiction in civil and criminal cases, as the General Assembly may prescribe.

SEC. 3. The judges of the Supreme Court of Errors, of the superiour and inferiour courts, and all justices of the peace, shall be appointed by the General Assembly, in such manner as shall by law be prescribed. The judges of the Supreme Court, and of the Superiour Court, shall hold their offices during good behaviour; but may be removed by impeachment; and the Governour shall also remove them on the address of two thirds of the members of each house of the General Assembly: All other judges and justices of the peace shall be appointed annually. No judge or justice of the peace shall be capable of holding his office, after he shall arrive at the age of seventy years.

tices of the peace, it would have followed the usual custom and included them, *eo nomine,* in the statute.

All that has been said applies with equal force to Chapter 62 of the Public Acts of 1923.

Under the latter statute, the claim is made that because it does not in terms require a hearing and is silent as to the manner in which the sentence is to be suspended, if at all, the defendant was justified in supposing that he had a right to select his own time, place and manner of suspending the jail sentence he had imposed on Stevens. This is not so, for the suspension of a sentence at or after it is pronounced is a judicial and not a personal determination. If the construction of this statute had required us to hold that the justice of the peace was included within its provisions, we should have been obliged to hold that neither a justice of the peace, nor a court nor a judge thereof, could, under the provisions of this statute, suspend a sentence pronounced by justice, court or judge without duly observing the fundamental essentials of judicial determination, among which are due notice, hearing and publication by oral pronouncement in open court, or upon the records of the court.

The other question involved requires no discussion, for it has already been decided that the issuance of a mittimus is a ministerial, and not a judicial act, and may be compelled by mandamus. *Smith* v. *Moore,* 38 Conn. 105. From this it follows that the respondent may be compelled to issue the mittimus, although disqualified by age from exercising any of the judicial functions of his office as justice of the peace. *Todd* v. *Bradley,* 97 Conn. 563, 117 Atl. 808.

There is error, the judgment is set aside and the cause remanded with direction to issue the writ of mandamus as prayed for.

In this opinion the other judges concurred, except
KELLOGG, J., who concurred in the result, but died be-
fore the opinion was written.