STATE OF CONNECTICUT *v.* JANE DOE

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued October 10, 1961—decided February 6, 1962

*Ernest H. Halstedt,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the plaintiff.

*William I. Mark,* for the defendant.

BALDWIN, C. J. This action has been reserved for the advice of this court upon facts agreed upon and set forth hereinafter. At the request of the parties, the trial court allowed the defendant to use a ficti-

tious name and the cause to be docketed as *State of Connecticut* v. *Jane Doe*. See General Statutes § 52-89; Practice Book § 199; *Buxton* v. *Ullman*, 147 Conn. 48, 59, 156 A.2d 508.

The defendant came from Rutland, Vermont, to Hartford, Connecticut, in January, 1961. Her parents reside in Rutland. From the time of her birth on September 14, 1939, until she came to Hartford, she had never resided in this state. On March 9, 1961, she applied for, and since that date has been receiving, welfare assistance from the city of Hartford. On March 13, 1961, the welfare authorities of Hartford, acting pursuant to General Statutes § 17-273a (formerly § 17-269), requested the state welfare commissioner to return her to Vermont, where the welfare authorities in Rutland have conceded that she has a "settlement." See Vt. Stat. Ann. tit. 33 § 701 (Sup. 1961). They have authorized her return, but she is unwilling to go. When the defendant applied for welfare assistance, General Statutes § 17-273a provided that when any person who belongs to another state comes to reside in this state and becomes chargeable or makes application for aid or is admitted to a state humane institution as an indigent person or pauper or otherwise, the proper municipal officials shall notify the state welfare commissioner. If he finds that the person belongs to another state, he may return him to the other state at the expense of the state of Connecticut, or he may apply to a court of competent jurisdiction, and the court "shall issue a warrant" to a proper officer to transport the person to the place whence he came to this state, or to the place of his former residence at the discretion of the commissioner. The expense of executing the warrant is to be paid by the state. The questions upon which our

advice is sought are whether this statute violates the federal and state constitutions.[1]

This is a case of first impression in this state. In *Harrison* v. *Gilbert,* 71 Conn. 724, 729, 43 A. 190 (1899), this court held that under the statute (Rev. 1888, § 3303) which is presently § 17-284 a pauper could be removed from one town to another within the state at the instance of the selectmen of the town to which he was being removed. See *Backus* v. *Dudley,* 3 Conn. 568, 573. Interstate removal of paupers has been considered by courts in other states, but not under legislation like that presently in force in Connecticut. *Matter of Chirillo,* 283 N.Y. 417, 28 N.E.2d 895 (dissenting opinion); *Chirillo* v. *Lehman,* 38 F. Sup. 65 (S.D.N.Y.), aff'd, 312 U.S. 662, 61 S. Ct. 741, 85 L. Ed. 1108; *State* v. *Lange,* 148 Kan. 614, 618, 83 P.2d 653; *Knowles' Case,* 8 Me. 71, 73; *Hilborn* v. *Briggs,* 58 N.D. 612, 616, 226 N.W. 737; *Overseers of Limestone* v. *Overseers of Chillisquaque,* 87 Pa. 294; *Settlement of Indigent Persons,* 20 Pa. D. & C. 94, 95; *Georgia* v. *Grand Isle,* 1 Vt. 464, 467.

The result we reach in the case at bar requires further proceedings and makes it desirable and necessary to review the history of § 17-273a[2] and its

---

[1] "(a) Is the return by execution of a proper warrant, to the state to which he belongs, of a person who meets the requirements set out in Section 17-269 [now § 17-273a] of the Connecticut General Statutes, violative of the Constitution of Connecticut?

"(b) Is the return by execution of a proper warrant, to the state to which he belongs, of a person who meets the requirements set out in Section 17-269 [now § 17-273a] of the Connecticut General Statutes, violative of the Constitution of the United States?"

[2] "Sec. 17-273a. (Formerly Sec. 17-269.) RETURN OF PERSON BELONGING TO ANOTHER STATE. When any person who appears to belong to another state comes to reside in any town in this state, and becomes chargeable or makes application for aid, or is admitted to a state humane institution as an indigent or pauper, or otherwise,

relation *to other* legislation dealing with the treatment of indigent persons. The support of persons unable to maintain themselves has, historically, been considered primarily a matter of local concern. Legislation relating to the settlement and care of the poor has evolved through the years from an origin in early colonial days. See 3 Col. Rec. 300 (1678-1689); *Plainville* v. *Milford,* 119 Conn. 380, 386, 177 A. 138. In January, 1961, when the defendant came to Hartford, General Statutes § 17-273 provided that all persons "who have not estate sufficient for their support, and have no relatives of sufficient ability who are obliged by law to support them, shall be provided for and supported at the expense of the town where they belong." To "belong" to a particular town, a person had to be a settled inhabitant thereof. *Connecticut Hospital for the Insane* v. *Brookfield,* 69 Conn. 1, 4, 36 A. 1017; *Columbia* v. *Williams,* 3 Conn. 467, 471. In March, 1961, when the defendant applied to the city of Hartford for aid, General Statutes § 17-263 provided that a nonresident who came to reside in any town in this state could not gain a settlement there unless he had continuously resided in the town

---

the selectmen of such town or the public official charged with the administration of public assistance in such town shall immediately notify the welfare commissioner on forms prescribed and furnished by said commissioner. If the commissioner finds that such person belongs to another state, *he may return such person to such other state at the expense of the state of Connecticut, or* he may apply to any court having jurisdiction, and such court shall issue a warrant to either constable of such town, any state policeman or other proper officer, ordering him to transport such person to the place whence he came to this state, or to the place of his former residence at the discretion of said commissioner. Such officer shall execute such warrant, and the expense thereof, having first been audited and approved by the welfare commissioner, shall be paid by the state." (The italicized portion was added by Public Acts 1959, No. 216.)

four years next preceding the time he claimed to be an inhabitant and had maintained himself during that whole period without expense to the town or the state. Other qualifications were prescribed which are not pertinent to this case. To gain a "settlement," a person had to acquire a residence in a town of a character that would entitle him, in case he became a pauper, to support at the expense of the town. *Washington* v. *Warren,* 123 Conn. 268, 271, 193 A. 751; *Chaplin* v. *Bloomfield,* 92 Conn. 395, 396, 103 A. 118. Many of the states have statutes of similar import. See, for example, Vt. Stat. Ann. tit. 33 § 701 (Sup. 1961). Because the defendant had not gained a settlement in Hartford, her application for welfare assistance in March, 1961, came within the provisions of General Statutes § 17-292 and § 17-285. These statutes provided for partial reimbursement by the state to the town supplying support and, in case the recipient had a settlement in another town in the state, for further reimbursement by that town.

At its 1961 session, the General Assembly amended General Statutes §§ 17-273 and 17-292 and repealed §§ 17-263 and 17-285. Public Acts 1961, No. 425, § 1; id., Nos. 321, 425 § 3, 517 § 122; id., No. 425, § 6; ibid. Effective October 1, 1961 (see General Statutes § 2-32), § 17-273 provides that the town shall furnish support to each person who resides in the town or, having no residence, becomes in need of aid there, if he cannot support himself and has no relatives able and obliged by law to support him. Section 17-292 allows the town to apply for and receive reimbursement from the state for 50 percent of the expenditures of the town for general assistance—in lieu of all other payments by way of reimbursement for relief expenditures. The net

effect of the changes in the statutory law has been to place the ultimate obligation for furnishing support to an indigent person, with the right of partial reimbursement from the state, on the particular town where he resides or, having no residence, becomes in need of support, rather than on the town, if any, in which he had a settlement in this state. When the defendant began receiving assistance from the city of Hartford in March, 1961, the respective obligations of the town and the state were defined by sections which, as shown above, have since been repealed or amended.

The power of removal from the state conferred by General Statutes § 17-273a has been claimed by Connecticut since long before the adoption of the federal constitution. Statutes, 1715, pp. 59-60; id., 1750, pp. 99-101; id., 1784, pp. 102-104; see Mandelker, "Exclusion and Removal Legislation," 1956 Wis. L. Rev. 57. Section 17-273a took substantially its present form as early as 1796. Statutes, 1796, p. 240. Several states presently have similar statutory provisions.[3] The states have not been unmindful of the problems raised by persons who have a regular place of abode in one state but journey with their families across state lines and seek wel-

---

[3] Cal. Welfare & Inst'ns Code § 2810; Iowa Code § 252.18 (1958); Me. Rev. Stat. Ann. c. 94 § 34 (1954); Mass. Ann. Laws c. 122 § 21 (Sup. 1961); Neb. Rev. Stat. § 68-114 (1958); N.H. Rev. Stat. Ann. § 166.18 (1955); N.J. Rev. Stat. §§ 44:8A-33, 44:8A-34 (Sup. 1944); N.D. Cent. Code § 50-02-19 (1960); Okla. Stat. tit. 56 § 36 (1951); Ore. Rev. Stat. § 411.720(1) (1952); Pa. Stat. Ann. tit. 18 § 2037 (1945); Va. Code Ann. § 63-332 (1950); cf. Ind. Ann. Stat. § 52-164 (1951); Ohio Rev. Code Ann. § 5113.07 (Baldwin 1953); S.D. Code §§ 50.0401 to 50.0404 (1939); Wis. Stat. § 49.09 (3) (1959); Wyo. Stat. Ann. § 42-25 (1957); compare Ala. Code tit. 44 § 19 (1958); R.I. Gen. Laws Ann. § 26-2-4 (1956); see Mandelker, "Exclusion and Removal Legislation," 1956 Wis. L. Rev. 57.

fare relief in another state. It was a simple thing in colonial days to provide that transients be ordered out of the colony under penalty of being whipped if they returned. See Statutes, 1715, p. 60. That kind of treatment, made necessary, perhaps, by the dangers and primitive conditions of those times, is revolting to modern sensibilities. Some states have retained statutes requiring bonds from, or imposing penalties by way of fines upon, persons who bring paupers into the state.[4] Section 17-273a imposes no penalties. It does not prevent an indigent person from coming into this state and it does not make it a criminal offense to bring him here. It is not an exclusion statute like the California statute (Cal. Welfare & Inst'ns Code § 2615 [1937]) which was held unconstitutional in *Edwards v. California*, 314 U.S. 160, 62 S. Ct. 164, 86 L. Ed. 119.

In 1933, the General Assembly enacted legislation authorizing the making of reciprocal agreements with other states regarding the interstate transportation of poor and indigent persons. Cum. Sup. 1933, § 475b; as amended, Cum. Sup. 1935, § 667c. This was the origin of what is presently § 17-293, which authorizes the welfare commissioner to enter into reciprocal agreements with other states for the interstate transportation of poor and indigent persons. At its session in 1961, the General Assembly enacted the Interstate Compact on Welfare Services Act, further implementing § 17-293. General Statutes §§ 17-21a—17-21d. California,

---

[4] See, for example, Ala. Code tit. 44 § 19 (1958); Ga. Code Ann. §§ 23-2305, 23-2307 to 23-2309 (1935); Ky. Rev. Stat. § 432.560 (1960); Me. Rev. Stat. Ann. c. 94 § 42 (1954); Mich. Comp. Laws §§ 402.18, 402.19 (1948); Neb. Rev. Stat. § 68-116 (1958); see Conn. General Statutes § 17-271, repealed, Public Acts 1961, No. 425, § 6.

Colorado, Delaware, Louisiana, Maine, Michigan, Minnesota, North Dakota, Pennsylvania, South Dakota, Vermont and Virginia, as well as Connecticut, have legislation authorizing agreements with other states for the interstate transportation of indigent persons.[5] The National Conference of Commissioners on Uniform State Laws promulgated a Uniform Transfer of Dependents Act as long ago as 1935. 9C U.L.A. 216-219 & Ann. Cum. Sup. Some of the states have dealt in a cooperative and comprehensive manner with an interstate problem which is within the power of the states to solve without action by the federal government.

"The range of state power is not defined and delimited by an enumeration of legislative subject-matter. The Constitution did not purport to exhaust imagination and resourcefulness in devising fruitful interstate relationships. It is not to be construed to limit the variety of arrangements which are possible through the voluntary and cooperative actions of individual States with a view to increasing harmony within the federalism created by the Constitution." *New York* v. *O'Neill,* 359 U.S. 1, 6, 79 S. Ct. 564, 3 L. Ed. 2d 585; see Frankfurter & Landis, "The Compact Clause of the Constitution—A Study in Interstate Adjustments," 34 Yale L.J. 685, 688-691. Agreements relating to the care of the poor, made among the states pursuant to their statutes, are not compacts which challenge the su-

[5] Cal. Welfare & Inst'ns Code §§ 2700 to 2702; Colo. Rev. Stat. Ann. §§ 119-5-1 to 119-5-4 (1953); Del. Code Ann. tit. 31 § 511 (4) (Sup. 1958); La. Rev. Stat. §§ 46:401, 46:402 (1950); Me. Rev. Stat. Ann. c. 25 § 9 (Sup. 1959); Mich. Comp. Laws § 400.13 (1948); Minn. Stat. §§ 261.25, 261.251 (1957); N.D. Cent. Code §§ 50-06-11, 50-06-12 (1960); Pa. Stat. Ann. tit. 62 §§ 2071 to 2073 (1959); S.D. Code §§ 50.0501 to 50.0503 (Sup. 1960); Vt. Stat. Ann. tit. 33 §§ 891 to 893 (1959); Va. Code § 63-114 (1950).

premacy of the United States under article I, § 10, clause 3, of the federal constitution. They can be entered into without the consent of the Congress. *Landes* v. *Landes,* 1 N.Y.2d 358, 365, 135 N.E.2d 562, appeal dismissed, 352 U.S. 948, 77 S. Ct. 325, 1 L. Ed. 2d 241; *Duncan* v. *Smith,* 262 S.W.2d 373, 377 (Ky. App.), 42 A.L.R.2d 754 & note, 768, 787; *Ham* v. *Maine-New Hampshire Interstate Bridge Authority,* 92 N.H. 268, 270, 30 A.2d 1; 81 C.J.S. 904. In the instant case, we are dealing with an agreement made by an administrative official of Connecticut with administrative officials in Vermont to return the defendant to Vermont. Basically, the principle is the same as that involved in a formal compact, and under the statutes of Connecticut and Vermont the appropriate officials in each state have legislative sanction for their action. General Statutes § 17-293; Vt. Stat. Ann. tit. 33 §§ 891-893; see *Marshall* v. *State,* 180 Tenn. 9, 14, 171 S.W.2d 269; *State ex rel. Interstate Motor Freight System* v. *O'Neill,* 104 Ohio App. 309, 312, 149 N.E.2d 24, aff'd, 167 Ohio St. 139, 140, 146 N.E.2d 720.

When the welfare legislation which we have been discussing is considered as a whole, it is apparent that the legislature intended to create a program for dealing with indigent persons and paupers who had an established residence in this state in a different manner, in some respects, from those who did not. It is significant that in undertaking major revisions of the statutes relating to the care and settlement of paupers, the legislature in 1961 deliberately retained § 17-273a. As has been pointed out, the obligation for providing support for an indigent person falls upon the town in which he resides or, having no residence, becomes in need

of aid (§ 17-273), with a right of partial reimbursement from the state. § 17-292. If the indigent person belongs to another state, under §§ 17-273a and 17-293 the welfare commissioner can enter into an agreement with authorized officials in that state for the support or return of the indigent person. This pattern for providing relief is one within the power of the state to adopt so long as the pattern does not infringe on the personal liberties of the individual involved and, by so doing, violate some established mandate guaranteeing personal liberty or collide with some other constitutional provision.

The defendant claims that § 17-273a violates article first, § 12, of the constitution of Connecticut and § 1 of the fourteenth amendment to the constitution of the United States. The due process of law provisions therein have the same meaning and impose similar limitations. *Proctor* v. *Sachner,* 143 Conn. 9, 17, 118 A.2d 621; *Cyphers* v. *Allyn,* 142 Conn. 699, 703, 118 A.2d 318. In 1959 the General Assembly amended the removal statute (then § 17-269, now § 17-273a) to include the provision by which the welfare commissioner has authority, if he finds that an indigent person belongs to another state, to return him to that state at the expense of the state of Connecticut. Public Acts 1959, No. 216. This provision gave the commissioner the authority to act at his discretion without applying for a warrant. If the indigent person goes voluntarily, no warrant is needed, but if he does not, as in the instant case, the commissioner can, under the provision which in essence has been contained in the statute since 1796 (Statutes 1796, p. 240), apply to the court for a warrant for the indigent person's removal.

Section 17-273a states that the court, on the ap-

plication of the commissioner, "shall" issue a warrant. As pointed out above, the statute took substantially its present form as early as 1796. In those days, however, the statutes providing for the removal of paupers, whether to another state or to another town within this state, contemplated the issuance of a warrant by "the Civil Authority" on application by the selectmen of the town. Statutes, 1796, p. 240, §§ 5, 4. Furthermore, the word "shall" was not used. Instead, it was stated that "the Civil Authority or major part of them . . . are hereby authorized . . . if they judge proper," to issue a warrant. Id. § 5. As late as 1875, the statutes provided that the proper authority, by that time justices of the peace, "may" issue a warrant. Rev. 1875, p. 197, §§ 8, 9. In *Stratford* v. *Sanford,* 9 Conn. 275, 282, and *Bethlehem* v. *Watertown,* 47 Conn. 237, 247, with reference to one of the statutes governing the removal of paupers within the state ( Statutes, 1824, p. 236, § 5; Rev. 1875, p. 197, § 8), the predecessor of § 17-270 (repealed, Public Acts 1961, No. 425, § 6), it was decided that the proceedings for removal were not judicial, but ministerial, in nature. In 1878, the applicable language in what was the predecessor to § 17-273a came to be that the selectmen of the town "may . . . apply to any justice of the peace therein, who shall issue his warrant" for the removal of the pauper. Public Acts 1878, c. 94, § 16. As amended in 1937 and 1939, the statute provided for the commissioner of welfare to make the application and for the warrant to be issued by a justice of the peace or "any court having jurisdiction." Sup. 1937, § 361d; Cum. Sup. 1939, § 559e. Effective January 1, 1961, the statute, then § 17-269, was further amended (Public Acts 1959, No. 28, § 56) to omit justices of the peace as officers to

whom the commissioner might apply for a warrant. This left the issuance of a warrant solely to "any court having jurisdiction."

The significance of these statutory changes becomes apparent when it is recalled that justices of the peace were from the earliest times considered ministerial as well as judicial officers. *McCarthy* v. *Clancy,* 110 Conn. 482, 495, 498, 148 A. 551; *Alcorn* v. *Fellows,* 102 Conn. 22, 31, 127 A. 911; 1 Swift, System, p. 92. No problem of unconstitutional delegation of power was involved when the ministerial power and duty of issuing warrants was vested in them. But when the statute was changed to transfer the function to "any court having jurisdiction," it ceased to be true that the function could be considered merely ministerial. Courts can constitutionally exercise only judicial functions. *State Water Commission* v. *Norwich,* 141 Conn. 442, 445, 107 A.2d 270; *Modeste* v. *Public Utilities Commission,* 97 Conn. 453, 458, 117 A. 494. If § 17-273a is to be construed as requiring the court to issue a warrant without judicial inquiry and upon a mere demand by the commissioner of welfare, it would be unconstitutional. It would result either in the conferring on the court of a function which is purely administrative or the transfer of a judicial function to an administrative officer. *Fagan* v. *Robbins,* 96 Fla. 91, 99, 117 So. 863; *Munro* v. *State,* 223 N.Y. 208, 214, 119 N.E. 444; *Perkins* v. *Cooper,* 155 Okla. 73, 75, 4 P.2d 64; *Diehl* v. *Crump,* 72 Okla. 108, 110, 179 P. 4, 5 A.L.R. 1272 & note, 1275; *Becker* v. *Lebanon & M. Street Ry. Co.,* 188 Pa. 484, 496, 41 A. 612; see *Wentz's Appeal,* 76 Conn. 405, 409, 56 A. 625. It is for some such reason, no doubt, that, as was well said in *Becker* v. *Lebanon & M. Street Ry. Co.,* supra, 496, "[t]he word 'shall' when used by

the legislature to a court is usually a grant of authority and means 'may,' and even if it be intended to be mandatory it must be subject to the necessary limitation that a proper case has been made out for the exercise of the power." See Black, Interpretation of Laws (2d Ed.) p. 554. An example of the application of this rule is found in *McCarthy* v. *Clancy,* supra. In that case, the court was discussing a statute (Rev. 1918, § 351) which provided that when any person appearing before the grand jurors refused to be sworn or to answer any proper question the jurors could complain to a justice of the peace, "who shall cause such person to be brought before him and commit him to jail." The court found (p. 495) that the intention of this legislation was to confer on the justice of the peace a judicial function and that it would be the duty of the justice, before issuing the warrant, to make inquiry into various matters, including whether the question asked was a proper one.

Courts "cannot impute to the Legislature an intent to pass an unconstitutional statute and a law should be construed, if it reasonably can be done, so as to make it valid." *State* v. *Muolo,* 119 Conn. 322, 330, 176 A. 401; *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 209, 91 A.2d 773; *Wilson* v. *West Haven,* 142 Conn. 646, 656, 116 A.2d 420. If the word "shall" is construed as permissive and not mandatory, the statute expresses a legislative intent that the court exercise a judicial discretion in acting on an application of the welfare commissioner for a warrant and we avoid any question of unconstitutionality in this respect. That the statute so construed expresses the intent of the legislature is clearly manifest from the 1959 amendment giving the commissioner authority to act with-

out a warrant. Public Acts 1959, No. 216. If the commissioner does not act on his own authority but applies for a warrant, obviously the court, and not the commissioner, must determine, on the evidence presented to it, whether a warrant should issue. The person sought to be returned is then afforded an opportunity to contest his removal and to assert his rights. We hold, therefore, that the statute calls on the court to which the commissioner applies for a warrant to exercise its judicial power and to determine on the evidence presented whether a warrant should issue.

In passing on an application for a warrant, the court would be required to consider relevant evidence such as the circumstances involved in the coming of the indigent person to Connecticut; his situation now that he is here; the circumstances involved if he remains; whether he came to this state able and willing to support himself, if he could find work and make his home here, or whether he came or was sent deliberately to seek welfare assistance; and whether he will need, indefinitely, such assistance in the form of financial aid or medical or institutional care. The evidence before the court should disclose whether, as to any indigent person whom the commissioner seeks by warrant to remove, the statute operates in a reasonable way, with due regard to the rights of the individual and the general welfare of the state, in conformity with constitutional mandates. "A statute may operate in a manner consistent with constitutional requirements when applied to one set of circumstances, although as to another it may produce a result which makes its operation unconstitutional." *State v. Sul,* 146 Conn. 78, 81, 147 A.2d 686, and cases cited; *Alabama State Federation of Labor* v.

*McAdory,* 325 U.S. 450, 462, 65 S. Ct. 1384, 89 L. Ed. 1725. We can assume that § 17-273a was designed not only to serve the best interests of the people of this state but also to operate in a manner not violative of individual rights. If there are any reasonable grounds on which its validity can be sustained, or any proper public purposes which it can reasonably serve, we must presume that the legislature intended them. *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 107, 90 A.2d 862; *Walsh* v. *Jenks,* 135 Conn. 210, 222, 62 A.2d 773.

The facts stipulated in this case are wholly inadequate to furnish a proper basis on which to consider the constitutionality of a statute which has such far-reaching consequences as § 17-273a. This is particularly true since we are called on to consider this statute in connection with legislation which was drastically amended at the last session of the General Assembly, and to render a decision which would not necessarily finally dispose of the case and could have little use in similar cases in the future. Practice Book § 469; *State* v. *Metrusky,* 140 Conn. 26, 31, 97 A.2d 574; *New Haven* v. *New Haven Water Co.,* 132 Conn. 496, 516, 45 A.2d 831; *Alabama State Federation of Labor* v. *McAdory,* supra, 463.

We refuse to answer the questions reserved.

In this opinion KING, SHEA and ALCORN, Js., concurred.

MURPHY, J. (concurring). I concur in the result reached by the majority opinion but not in the directive as to the manner in which the court is to exercise its judicial function. The welfare commissioner is given a certain amount of discretion by § 17-273a in determining whether an applicant for aid or a

recipient of aid belongs to another state. If the commissioner determines that the applicant so belongs, he still has discretion to decide whether to seek a warrant from the court. Where the commissioner applies for a warrant, the court should confine itself to a review of his action. Unless the commissioner is found to have acted arbitrarily, illegally or in abuse of his discretion, the warrant should issue. We have consistently held that to be the extent of the court's function in passing upon the action of an administrative officer or agency. See cases such as *Norton* v. *Shore Line Electric Ry. Co.*, 84 Conn. 24, 32, 78 A. 587; *Holley* v. *Sunderland*, 110 Conn. 80, 83, 147 A. 300; *Beaverdale Memorial Park, Inc.* v. *Danaher*, 127 Conn. 175, 182, 15 A.2d 17; *Dempsey* v. *Tynan*, 143 Conn. 202, 206, 120 A.2d 700. I see no logical reason why a special rule should be made in cases such as this.